Simone and Mary **DE CAVALCANTE,**
**Appellants-Cross-Appellees,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Appellee-Cross-Appellant.**

Nos. 79–2196, 79–2197.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule
12(6) March 21, 1980.

Decided April 16, 1980.

Fred Randall, Livingston, N. J., for appellants.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief App. Section, Carleton D. Powell, Gayle P. Miller, Attys., Tax Div., Dept. of Justice, Washington, D. C., Lester Stein, Acting Chief Counsel, I.R.S., Washington, D. C., for appellee.

Before SEITZ, Chief Judge, and GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

The Commissioner assessed the De Cavalcantes[1] for unpaid income taxes on more than 2.5 million dollars of illegal gambling income allegedly earned between 1965 and 1969. Upon the taxpayer's petition for review, the United States Tax Court, in an opinion dated October 31, 1978, upheld the Commissioner's assessment for one half of the tax year 1968 and for 1969, but it did not find any deficiencies in tax for the years 1965 to the middle of 1968.[2] Both parties appeal from the Tax Court's decision. De Cavalcante claims that there is no evidence to support the deficiencies which were upheld. The Commissioner claims that the Tax Court misallocated the burden of proof in refusing to sustain the assessments charged against income allegedly earned between 1965 and the middle of 1968. After reviewing both of these contentions, we conclude that the decision of the Tax Court should be affirmed in all respects.[3]

### I.

The critical evidence in the Commissioner's case is the fact that on October 23, 1970, De Cavalcante pled guilty in federal district court to an indictment which charged him with conspiracy to violate 18 U.S.C. § 1952, by operating an illegal gambling enterprise.[4] One of the overt acts of conspiracy listed in the indictment charged that De Cavalcante "did supervise and control the business of accepting wagers and bets."[5]

---

1. Mrs. De Cavalcante is joined as a petitioner only because she was a signatory on the joint tax returns. Henceforth, for ease of reference, this opinion will refer to Mr. De Cavalcante only.

2. The Tax Court opinion is reported at 37 T.C.M. 1783 (1978).

3. The Tax Court also sustained tax deficiencies which were assessed against income used by De Cavalcante to purchase interests in certain corporations owned principally by a Mr. Laurence Wolfson, a long-time friend of his, and for income resulting from payments made by Mr. Wolfson to De Cavalcante. We conclude that the taxpayer challenges to these deficiencies are without merit. The evidence clearly establishes that De Cavalcante did not meet his burden in challenging these tax assessments.

4. On December 15, 1969, when De Cavalcante was indicted, this section provided, in pertinent part, as follows:

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

. . . . .

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling . . . in violation of the laws of the State in which they are committed or of the United States. . . .

18 U.S.C. § 1952 (1965).

5. The indictment charged, in pertinent part, as follows:

*COUNT ONE*

1. From on or about the 1st day of January, 1965, and continuously thereafter, up to and including the date of the filing of this Indictment, in the District of New Jersey and elsewhere, SAMUEL RIZZO DE CAVAL-

In addition, at the Rule 11 proceeding, taken in connection with De Cavalcante's guilty plea, De Cavalcante made further remarks in regard to the scope of his connection with the gambling operation. As part of its effort to establish a factual basis for the guilty plea, the district court specifically called De Cavalcante's attention to the fact that the indictment charged that he had "supervised" the gambling operations. Immediately after this, De Cavalcante abruptly stated, "I plead guilty."

The remainder of the Commissioner's evidence consisted of testimony about the investigation of De Cavalcante's gambling operations which had been conducted jointly by the FBI and the Internal Revenue Service during 1968 and 1969 and which led to the indictment against De Cavalcante. From extensive wiretaps conducted in 1968 and 1969, and from personal surveillance of De Cavalcante and his associates, government agents testified that they were able to establish not only the existence of the gambling operation but they were also able to estimate the gross receipts from gambling and the approximate net returns to the principal operators of the gambling ring.[6] Moreover, John A. Bartels, Jr., the Justice Department Attorney in charge of the investigation testified that De Cavalcante had been identified as the ringleader of the gambling operation on the basis of statements given to the FBI by a confidential informant. But, in a statement which proved crucial to the government's case before the Tax Court, Mr. Bartels admitted that the investigation had focused exclusively on 1968 and 1969 and that the government had no evidence of any illegal gambling prior to 1968.

De Cavalcante's evidence before the Tax Court consisted primarily of his own testimony and the testimony of others who stated that De Cavalcante had never had any connection with gambling. In addition, De Cavalcante tried to undercut the impact of his guilty plea, claiming that he pled guilty solely out of duress—ill health, fear of the adverse publicity which would attach to a

CANTE, CHARLES MAJURI, JOSEPH IP-POLITO, ANTHONY DE PASQUE aka MASHER, ALESSIO BARRASSO, * * * defendants herein, unlawfully, wilfully and knowingly did combine, conspire, confederate and agree together and with each other and with divers other persons whose names are to the Grand Jury unknown, to commit offenses against the United States, to wit, to violate Section 1952 of Title 18, United States Code.

2. It was a part of the said conspiracy that the defendants did use and cause to be used a facility in interstate commerce; to wit, a telephone between the State of New Jersey and Troy, New York, and elsewhere; with intent to promote, manage, carry on and facilitate the promotion, management, and carrying on of an unlawful activity, said unlawful activity being a business enterprise involving gambling in violation of the Penal Law of the State of New Jersey, to wit, "lottery" in violation of Section 3, Subtitle 121, Title 2A, New Jersey Statutes Annotated (2A:121-3, N.J.S.A.); and thereafter, the defendants did perform, and attempt to perform acts facilitating the promotion, management and carrying on of said unlawful activity.

3. It was further a part of said conspiracy that the defendants did travel and cause others to travel in interstate commerce; to wit, between the State of New Jersey and Troy, New York, and elsewhere; with intent to promote, manage, carry on and facilitate the promotion, management and carrying on of an unlawful activity; said unlawful activity being a business enterprise involving gambling, in the violation of the Penal Law of the State of New Jersey, to wit "lottery" in violation of Section 3, Subtitle 121, Title 2A, New Jersey Statutes Annotated (2A:121-3, N.J. S.A.) and thereafter the defendants did perform and attempt to perform acts facilitating the promotion, management and carrying on of said unlawful activity.

4. Among the means by which the defendants did carry out the aforesaid conspiracy were the following:

A. The defendants SAMUEL RIZZO DE CAVALCANTE and ALESSIO BARRASSO did supervise and control the business of accepting wagers and bets.

B. The defendants JOSEPH IPPOLITO, ANTHONY DE PASQUE aka MASHER, CHARLES MAJURI, NICK ZARRO and RALPH MASCIOLA did supervise the daily operation of the controllers who accepted numbers wagers and bets from numbers writers.

6. On appeal, De Cavalcante does not challenge the Commissioner's computations. His argument, as will be discussed *infra*, is solely that the government failed to prove that he had any connection with gambling.

long trial and fear of a long sentence.[7] Thus, despite his guilty plea, De Cavalcante maintained that he had no connection with gambling.

The Tax Court found that because of his guilty plea, coupled with his statement at the Rule 11 proceeding, De Cavalcante was estopped from denying his connection with gambling activities. Moreover, the Tax Court, after examining the testimony presented on De Cavalcante's behalf, determined that it lacked credibility. Thus, the court concluded that De Cavalcante had not met his burden of adducing facts to show the arbitrariness of the Commissioner's assessment. Nonetheless, relying on the admission by Mr. Bartels, the Tax Court concluded that the Commissioner had produced no evidence whatsoever which indicated that a gambling operation had existed prior to the 1968 tax year or which implicated De Cavalcante in such an activity. Consequently, the Tax Court only sustained the taxes assessed against deficiencies determined for the latter half of 1968 and for 1969.[8] Both De Cavalcante and the Commissioner appealed from the Tax Court's decision. Their arguments will be discussed in turn.

## II.

### De Cavalcante's Appeal (No. 79–2196)

■ De Cavalcante argues on appeal that the Tax Court erred in concluding that there was credible evidence which connected him with any gambling activity. The scope of appellate review of factual determinations of the Tax Court, such as the ones challenged here by De Cavalcante, is quite limited. This court described the applicable standards of review in *Gerardo v. Commissioner*, 552 F.2d 549, 552 (3d Cir. 1977):

> In the Tax Court, the Commissioner's determination carries a presumption of correctness, *see Baird v. Commissioner of Internal Revenue*, 438 F.2d 490, 492 (3d Cir. 1971), and the taxpayer has the burden of proving that determination "to be arbitrary (i. e., without rational foundation in fact and based upon unsupported assumptions) . . . ." *Harry Gordon*, 63 T.C. 51, 73 (1974), *modified*, 63 T.C. 501 (1975) appeal pending; *see Baird v. Commissioner of Internal Revenue, supra* at 492. On appeal, our scope of review "is limited by the general principle that all findings of facts made by the Tax Court and all inferences drawn by it from these facts are binding on the appellate courts unless 'clearly erroneous.'" *Costantino v. Commissioner of Internal Revenue*, 445 F.2d 405, 407 n. 5 (3d Cir. 1971).

Thus, in order to prevail, De Cavalcante must show that the Tax Court made clearly erroneous findings of fact.

■ Our review of the record indicates that De Cavalcante has not met this burden. The Tax Court had before it ample evidence of De Cavalcante's involvement with gambling: the guilty plea, Mr. De Cavalcante's admission during the guilty plea proceeding,[9] and the testimony of the

---

7. De Cavalcante had made these same arguments before the district court in his criminal proceeding as part of a motion to withdraw his guilty plea. The district court denied that motion, stating "I cannot believe that if Mr. De Cavalcante was not guilty that a team of horses could have dragged from him a guilty plea." App. 99a. This court affirmed the district court's ruling on appeal. *United States v. De Cavalcante*, 449 F.2d 139 (3d Cir. 1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972).

8. The Tax Court also sustained fraud penalties assessed against the De Cavalcantes, pursuant to IRC § 6653, with respect to these deficiencies. This decision was based upon a finding that the Commissioner had shown "clear and convincing" proof of fraud. 37 T.C.M. at 1792; *see* Rules of Practice and Procedure of the U. S. Tax Court 142(b). De Cavalcante appeals this decision. Because we cannot conclude that the Tax Court was "clearly erroneous" in the facts which it found, we shall affirm the assessment of fraud penalties. *See Estate of Mazzoni v. Comm'r* 451 F.2d 197, 201–02 (3d Cir. 1971).

9. The Tax Court correctly noted that the guilty plea only admitted the minimum facts necessary to sustain the conspiracy charge—an agreement and an overt act—and would not, by itself, be sufficient to prove that De Cavalcante actually supervised a gambling operation. *See United States v. Podell*, 572 F.2d 31 (2d Cir. 1978). But the admissions which De Caval-

government agents. De Cavalcante's proof in rebuttal consisted largely of his own self-serving testimony by himself and others. The district court rejected this testimony on credibility grounds. The Tax Court was empowered to disregard this testimony, *see Gerardo*, 552 F.2d at 553, and on this record, we are bound by such credibility findings.

Thus, we cannot conclude that the Tax Court erred in its determination that De Cavalcante had failed to introduce evidence sufficient to prove that the Commissioner's tax assessments for late 1968 and 1969 were arbitrary.

### III.

*The Commissioner's Appeal (No. 79–2197)*

In his cross appeal, the Commissioner argues that the Tax Court misapplied this court's decision in *Gerardo v. Commissioner, supra*, when it refused to uphold the full amount of tax assessed. The Commissioner claims that the tax assessed for the period between January 1965 and July 1968 was not without rational basis and that the Tax Court erred by requiring the government to come forward with evidence of De Cavalcante's involvement in gambling activities during that period. We conclude that the Tax Court correctly applied the law of this Circuit.

In *Gerardo*, the IRS had conducted an investigation of a lottery operation between August 5, 1966 and February 3, 1967, which provided ample evidence that the taxpayer acted as a principal in the lottery operation throughout that time. The deficiency assessed against Gerardo, however, went back past August 5, 1966 to April 4, 1966. The only evidence connecting Gerardo to any gambling activity prior to the period when surveillance of him began was an April 4, 1966 raid of another gambling location where the government found betting slips similar to those used in Gerardo's lottery operation. This court found that this evidence was not sufficient to sustain the in-

ference that Gerardo was engaged in gambling activities prior to August 5, 1966. Consequently, in the following passage, the court concluded that the Commissioner was not entitled to the presumption of correctness for that period:

[I]n order to give effect to the presumption on which the Commissioner relies, some evidence must appear which would support an inference of the taxpayer's involvement in gambling activity during the period covered by the assessment. Without that evidentiary foundation, minimal though it may be, an assessment may not be supported even where the taxpayer is silent. *See Pizzarello v. United States, supra* [408 F.2d] at 583.

While we realize the difficulties which the Commissioner encounters in assessing deficiencies in circumstances such as are presented here, we nevertheless must insist that the Commissioner provide some predicate evidence connecting the taxpayer to the charged activity if effect is to be given his presumption of correctness.

552 F.2d at 554.

■ *Gerardo*, therefore, stands for the proposition that the "Commissioner [must] provide some predicate evidence connecting the taxpayer to the charged activity." 552 F.2d at 554. The Commissioner correctly points out that this was not intended to alter radically the presumption of correctness which attaches to tax assessments; *Gerardo* recognizes that the "predicate evidence" may be "minimal." Thus, if the Tax Court, in fact, imposed an extra burden on the Commissioner, the Commissioner would have presented a valid argument in his appeal.

The problem confronting the Commissioner here, however, is that the Tax Court addressed and properly applied *Gerardo*. It held that there was *no* predicate evidence of De Cavalcante's gambling activities prior to mid-1968. The opinion of the Tax Court specifically stated: "Respondent has shown no evidence of a gambling operation in [1965, 1966 and 1967]." 37 T.C.M. at 1793.

cante made in the course of his Rule 11 proceeding broadened the collateral estoppel effect of the plea. *United States v. Podell, supra.*

Thus, De Cavalcante was, in effect, estopped from making the defense which he asserts.

█ We cannot conclude that the Tax Court erred in finding that there was no evidence of a gambling operation prior to 1968. In attempting to prove its case, the Commissioner relied almost exclusively on De Cavalcante's conviction and the evidence which led to his indictment. But the Justice Department Attorney who had been in charge of De Cavalcante's prosecution testified that the government's investigation found no evidence of pre-1968 gambling activity and that the indictment was extended back to 1965 for procedural purposes only.[10]

█ The Commissioner seems to argue that despite *Gerardo's* clear requirement of some "minimal" "predicate evidence," tax assessments are entitled to be presumed correct so long as a "reasonable" basis for the tax can be inferred from the evidence before the court. Thus, in support of his pre-1968 assessment, the Commissioner argues that the gambling operation in which De Cavalcante was involved "manifestly did not arise overnight." *Brief for Commissioner* at 35–36. The Commissioner's argument misses the mark, however, by ignoring the fact that a similar inference could have been drawn in *Gerardo*.[11] The essential point of *Gerardo* is that no inference is

reasonable if it is wholly lacking of even a minimal factual basis. *See United States v. Janis*, 428 U.S. 433, 441–42, 96 S.Ct. 3021, 3025–3026, 49 L.Ed.2d 1046 (1976); *Pizzarello v. United States*, 408 F.2d 579 (2d Cir. 1969) *cert. denied* 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1970). Thus, because the Tax Court did not err in concluding that there was no evidence of gambling activities prior to the middle of 1968, its decision not to sustain the tax deficiencies assessed for that period was also not in error.

IV.

Inasmuch as we have determined that neither of the parties can prevail on their respective appeals, we will affirm the October 31, 1978 decision of the Tax Court which upheld the tax deficiencies determined with respect to 1969 and the latter half of 1968 and which refused to sustain any other taxes on gambling income allegedly earned by De Cavalcante.

10. The fact that De Cavalcante's guilty plea was to an indictment extending back to 1965 is not evidence that he was involved in gambling prior to 1968. *See* note 9, *supra.* In situations involving the collateral estoppel effects of criminal judgments based on conspiracy counts, the trial court in the subsequent civil proceeding must examine the entire record to determine exactly what was decided in the criminal proceeding. *Emich Motors v. General Motors*, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed.2d 534 (1951); *United States v. Podell, supra.* This is so because there can be no collateral estoppel effect as to matters not specifically determined or which were not otherwise essential to the determination of guilt. *See Frank v. Mangum*, 237 U.S. 309, 334, 35 S.Ct. 582, 590, 59 L.Ed. 969 (1915); *United States v. Colacurcio*, 514 F.2d 1 (9th Cir. 1975). In this case, the Tax Court followed the *Emich* rule precisely. It heard direct testimony by the individual in charge of the criminal prosecution, stating that the government did not encounter any evidence of De Cavalcante's participation in gambling prior to mid-1968. Consequently, the Tax Court correctly concluded that De Cavalcante

was not estopped from denying any connection with gambling during that period.

The testimony of Bartels, the United States Attorney who prosecuted De Cavalcante, was to the effect that the 1965 commencement date enabled the indictment to cover the full period of the statute of limitations. Moreover, a liberal starting date was stated so that the government would have greater leeway with respect to evidence which it would seek to introduce at trial.

11. Indeed the facts in *Gerardo* created a stronger inference of pre-investigation gambling activity than do the facts in the instant case. There the April 4, 1966 raid at least showed that a gambling operation which was similar to the one managed by Gerardo had existed prior to the investigation period. In *Gerardo*, the government simply failed to connect the taxpayer with any earlier operation. By contrast, in this case not only is there no evidence linking De Cavalcante to any pre-1968 gambling activities, but there is also a complete lack of evidence that a gambling operation was in existence during that time period.