JOSEPH B. PIAZZA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Piazza v. Commissioner
Docket No. 12051-80.
United States Tax Court
T.C. Memo 1985-222; 1985 Tax Ct. Memo LEXIS 407; 49 T.C.M. (CCH) 1449; T.C.M. (RIA) 85222; May 9, 1985. Santo A. Agati, for the petitioner. Howard Philip Newman and James P. Clancy, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined the following deficiencies in and *408 additions to petitioner's Federal income taxes: Year
Amount
Sec. 6653(b) [1]
1973
$21,634.50
$10,817.25
1974
30,893.03
15,446,52
1975
30,859.48
15,429.74
This fraud case involves extortion payments that petitioner, an elected public official, allegedly obtained from contractors during his term of office. After various concessions by the parties, discussed below, the only issues for decision are whether and to what extent petitioner received the extortion payments and whether petitioner is liable for the fraud addition for 1974. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Swoyersville, Pennsylvania, at the time he filed his petition in this case. Petitioner filed individual Federal income tax returns (Forms 1040) for the years in issue reporting the following *409 amounts of adjusted gross income: Year
Amount
1973
$15,216.66
1974
2,348,49
1975
2,585.13
Petitioner had lived in Swoyersville, Luzerne County, Pennsylvania, his entire life and had been involved in local politics off and on for more than 25 years. From 1971 until 1977 petitioner was a member of the Swoyersville Borough Council, an elected position. He also served as chairman of the Council. The Luzerne County Redevelopment Authority had the power to award certain construction contracts in the Borough of Swoyersville. Such contracts required the signature of the chairman of the Swoyersville Borough Council. [2]
*410 After severe storms and massive flooding that occurred in that area of Pennsylvania in 1972, there was a lot of construction and repair work to be performed throughout the area. During 1973, the Luzerne County Redevelopment Authority awarded a construction contract in Swoyersville to Dalton Leroy Griffith (Griffith). Petitioner, as chairman of the Borough Council, signed the Griffith contract. Petitioner first met Griffith at the Luzerne County Redevelopment Authority and met Griffith socially on several occasions after the contract was awarded. The Swoyersville Municipal Authority members were appointed by the Swoyersville Borough Council, primarily to seek Federal grants or other funding and to run the construction projects so funded. The Swoyersville Municipal Authority had either five or six members whose terms were for a limited number of years. The terms of some members of the Swoyersville Municipal Authority expired during petitioner's term as chairman of the Swoyersville Borough Council. One or two individuals recommended by petitioner were appointed to the Municipal Authority. During 1974 and 1975, Peter Insana (Insana) was a contractor performing a sewer project *411 in the Borough of Swoyersville. That construction contract had been awarded by the Swoyersville Municipal Authority during December 1973. Petitioner and Insana first met in January 1974. They became friends and socialized on several occasions. On July 22, 1977, petitioner was indicted by a Federal grand jury. The five counts of the indictment covering 1973 through 1975 charged petitioner with two counts of extortion 18 U.S.C. § 1951 (1982), and with three counts of wilfully making false statements on his Federal income tax returns. Sec. 7206(1). On January 13, 1978, petitioner pled guilty to two counts of the indictment pursuant to a plea bargain. The two counts to which petitioner pled guilty had charged petitioner as follows: COUNT TWO
THE GRAND JURY FURTHER CHARGES: 1. At all times pertinent hereto, the defendant, JOSEPH PIAZZA was Chairman of the Swoyersville Borough Council. 2. From on or about May 2, 1974 to on or about June 1, 1975, in the Middle District of Pennsylvania, the defendant, JOSEPH PIAZZA unlawfully, wilfully and knowingly did obstruct, delay and affect and did attempt to obstruct, delay and affect interstate commerce *412 and the movement of articles and commodities in interstate commerce, that is, construction equipment, materials and supplies, by extortion, in that the defendant, in his position as Chairman of the Swoyersville Borough Council, did obtain property that was not due him in the form of money in the amount of approximately $67,700 from Pete Insana, President, Insana Construction Company, with this consent, such consent being induced under color of official right. In violation of Title 18, United States Code, Sections 1951 and 2. * * * COUNT FOUR
THE GRAND JURY FURTHER CHARGES: On or about February, 2, 1975, in the Middle District of Pennsylvania, JOSEPH PIAZZA a resident of Swoyersville, Pennsylvania, did unlawfully, wilfully and knowingly make and subscribe a United States Individual Income Tax Return, Form 1040, for the calendar year 1974, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter in that the said return reported gross income from wages and salaries of $900.00, dividends *413 of $498.65 and other income of $949.84, whereas, as he then and there well knew and believed, he received substantial income in addition to that heretofore stated. In violation of Title 26, United States Code, Section 7206(1). In the proceedings at which the District Court accepted petitioner's change of plea from "not guilty" to "guilty," petitioner was placed under oath and warned by the judge that he could be faced with perjury if he made any false statements. Then petitioner was carefully questioned by the judge to assure that petitioner understood the plea bargain, that he had no undisclosed or different understanding than that stated on the record, and that he understood the nature of the charges to which he was pleading guilty. The judge's examination of petitioner included the following colloguy: THE COURT: Now, Mr. Piazza, you've read Count 2; have you? MR. PIAZZA: Yes, I have. THE COURT: And Count 2 charges you with while you were Chairman of the Swoyersville Borough Council that from on or about May 2, 1974 to on or about June 1, 1975 that you did unlawfully, willfully and knowingly obstruct interstate commerce and the movement of articles *414 in commerce in that you, while you were Chairman of the Swoyersville Borough Council, obtained property, obtained money that was not due you, in the form of money, from Pete Insona [sic], President of the Insona [sic] Construction Company, with his consent but that his consent was induced under color of official right. Now, what that means is that you obtained money from Mr. Insona [sic] because of your position as Chairman of the Swoyersville Borough Council, and that in obtaining this money--Insona [sic] did business with the borough; did he? MR. HANLON [petitioner's defense counsel]: The municipal authority, Your Honor. THE COURT: The municipal authority. He's a contractor; is he? MR. PIAZZA: What? MR. HANLON: Yes. THE COURT: Is he a contractor? MR. PIAZZA: Yeah, Pete Insona [sic] is a contractor. THE COURT: Well, the charge is, in Count 2, is that you as Chairman of the the Swoyersville Borough Council, and one in a position to affect Mr. Insona's [sic] doing business with the authority, that you obtained money from him and that you did it unlawfully, meaning contrary to law; that you did it willfully, that means with the specific intent to do something *415 the law forbids. That is, with bad purpose to either disregard or disobey the law. And you did it knowingly, and that means that you knew what you were doing. That this wasn't done accidently, or inadvertently. MR. PIAZZA: I didn't know what I was doing? I knew what I was doing. THE COURT: And the consequence of this was to obstruct interstate commerce. Now, do you have any questions about Count 2 at all? MR. PIAZZA: What's Count 2? MR. HANLON: That's the Insona [sic]. THE COURT: That's the Insona [sic]. MR. PIAZZA: No, no, no, Your Honor, no questions, sir. THE COURT: I've spelled out what you are charged with doing. I've defined the intent that the government would have to establish to the satisfaction of the jury, and you say you understand what was meant by those terms: the term, unlawfully; the term, willfully; and the term, knowingly. Did you understand the definition of those terms? MR. PIAZZA: I did, Your Honor. THE COURT: If you have any questions now as to what they mean now is the time to ask me. MR. PIAZZA: I have none whatsoever. THE COURT: And that by entering a plea of guilty you say, or you're admitting that you're guilty of and you did *416 what you're charged with doing in Count 2? MR. PIAZZA: I did. THE COURT: Now, in Count 4, which is the violation of the Internal Revnue [sic] Code, you're charged that on or about February 2, 1975 that you unlawfully, willfully and knowingly made and subscribed to a United States Individual Income Tax Return, Form 1040 for the calendar year 1974, in which you swore that the information therein was true and correct as to every material matter in that said return. Reported gross income from wages and salaries of $900.00; dividends of $498.65; and other income of $949.84. Whereas, as you then and there well knew and believed you received substantial income in addition to that amount; do you understand that? MR. PIAZZA: I do. THE COURT: Now, once again, unlawfully is used in the count, and unlawfully means that you acted contrary to law. The word willfully is used, and the word willfully means that you acted with specific intent to do something the law forbids. That is, with bad purpose to either disregard or disobey the law. And you are charged with doing it knowingly. That is, you knew what you were doing. MR. PIAZZA: I did, Your Honor. THE COURT: And that it wasn't *417 accidental or inadvertent, and that you then and there well knew, February 2, 1975, which was the date you submitted your 1040 return, or you signed your 1040 return, at that time you well knew and believed that you had received substantial income in addition to the amount stated in that 1040 return. MR. PIAZZA: That's correct, Your Honor. THE COURT: Now, do you have any questions concerning any of the elements of Count 4? MR. PIAZZA: None whatsoever. THE COURT: Now, if you enter a plea of guilty then you say that you are, in fact, guilty of Count 4, and that you committed the offense as charged therein, and you did it under the circumstances as mentioned. That's unlawfully, willfully and knowingly; do you understand that? MR. PIAZZA: I do. THE COURT: Now, can I be satisfied then that you understand what you are charged with in Count 4 and that you're guilty of that offense? MR. PIAZZA: Yes, sir. Yes, Your Honor. THE COURT: All right, we will accept the plea. In essence petitioner admitted under oath that he was guilty of the acts as charged in Counts Two and Four. [3] The District Court Judge then accepted his guilty plea, and the prosecution dismissed the other *418 three counts. [4]
*419 Petitioner was fined $2,000 and sentenced to prison for one year on Count Two and placed on two years' probation on Count Four. As a special condition of probation, the District Court directed that "the defendant [petitioner] shall make payment of all income taxes and penalties involved in the offense." In his statutory notice, respondent determined that petitioner received and failed to report in income $47,600 in extortion payments from Griffith in 1973 and $67,500 from Insana in both 1974 and 1975. Respondent also determined that petitioner was liable for the fraud addition under section 6653(b) for all three years. Respondent concedes that petitioner is taxable only on a single amount of $67,500 for the period 1974-1975. Respondent's duplicative determination was made to protect the revenue, and his primary position is that the entire amount is properly taxable in 1974. Petitioner stipulated that he failed to report $1,500 of taxable income in his 1974 return and that he "is liable for the addition to tax for fraud for the year 1974." Petitioner admits that this $1,500 was received from Insana. On brief, respondent concedes that he has failed to prove fraud on the *420 part of petitioner for 1973. Respondent also concedes that there is no deficiency or fraud addition for 1975 if we sustain his primary position that the entire $67,500 extortion payment is taxable to petitioner in 1974. OPINION The normal split burden of proof applies in this case. [5]Zack v. Commissioner,692 F. 2d 28 (6th Cir. 1982), affg. a Memorandum Opinion of this Court, cert. denied 460 U.S. 1084 (1983). Normally, the Commissioner's determination of a deficiency is presumptively correct and the taxpayer has the burden of proving it wrong. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a).On the other hand, respondent bears the burden to establish a taxpayer's fraud for each year by clear and convincing evidence. Sec. 7454(a). Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). Because of factual and other differences, we will address each year separately. *421 1973
With respect to 1973, there is a singular dearth of evidence in the record. It this were the normal situation, the Court would rule that respondent had failed to carry his burden of proof to establish fraud and that petitioner had failed to show error in the determination of the deficiency. However, further discussion of the record is warranted here. Respondent offered into evidence the IRS special agent's written report of his interview with Dalton Leroy Griffith. The Court was not satisfied that Griffith was "unavailable" under Rule 804(a), Federal Rules of Evidence (Fed. R. Evid.). More importantly, the Court was not satisfied that the report of interview had sufficient or indeed any "equivalent circumstantial guarantees of trustworthiness" to come within any exception to the hearsay rule under Rule 803(24)(C) or Rule 804(b)(3) or (b)(5)(C), Fed. R. Evid. Accordingly, the Court refused to receive this hearsay document, and it is not part of the evidentiary record in this case. The Court has before it the July 22, 1977 indictment in which Count One involves the purported $47,600 extortion payment from Dalton Leroy Griffith, and Count Three involves the filing *422 of a false return for 1973. However, those counts of the indictment were dismissed pursuant to a plea bargain. With respect to 1973, there can be no collateral estoppel from any of petitioner's criminal convictions. Count One of the indictment against petitioner, dismissed pursuant to his plea bargain, charged him with extorting $47,600 from Dalton Leroy Griffith in 1973. This is the omitted income that respondent determined in his statutory notice to petitioner. Petitioner denies receiving any money from Griffith. Petitioner argues that respondent has presented no evidence to rebut his uncontradicted testimony and therefore petitioner must prevail for 1973. The Court need not accept a taxpayer's self-serving testimony, even if it is uncontradicted, if the Court finds the testimony unreasonable, improbable, or questionable. Lovell and Hart, Inc. v. Commissioner,456 F. 2d 145, 148 (6th Cir. 1972); Ruark v. Commissioner,449 F.2d 311, 312 (9th Cir. 1971). SeeQuock Ting v. United States,140 U.S. 417, 420-421 (1891). However, here, *423 we are mindful that petitioner is being asked to prove a negative, namely, that he did not receive certain illegal payments. If we had to weigh the credibility of his denials against the presumption of correctness of respondent's notice of deficiency, this would be a very close and difficult issue to resolve. However, for reasons discussed below, we conclude that no presumption of correctness attached for the year 1973. The Third Circuit, to which (barring stipulation to the contrary) any appeal would lie in this case, has held that where respondent determines a taxpayer has received unreported income from an illegal activity, respondent "must provide some predicate evidence connecting the taxpayer to the charged activity if effect is to be given his presumption of correctness." Gerardo v. Commissioner,552 F. 2d 549, 554 (3d Cir. 1977). See also Walker v. Commissioner,757 F. 2d 36 (3d Cir. 1985), revg. a Memorandum Opinion of this Court, and De Cavalcante v. Commissioner,620 F. 2d 23, 27-28 (3d Cir. 1980). Agsent some "evidentiary *424 foundation, minimal though it may be," respondent cannot prevail. Gerardo v. Commissioner,supra.We do not think that the 1973 extortion count of the grand jury indictment, dismissed pursuant to a plea bargain, satisfies this requirement for some minimal predicate evidence. A Federal grand jury has broad investigatory powers. "An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States,350 U.S. 359, 363 (1956). See also United States v. Calandra,414 U.S. 338, 343-346 (1974); Lawn v. United States,355 U.S. 339, 348-350 (1958). A grand jury indictment may be based in part or in whole upon inadmissible evidence, such as hearsay. Costello v. United States,supra.The grand jury's indictment, thus, is not subject to any challenge based on the adequacy or competency of the evidence before the grand jury. Costello v. United States,supra;United States v. Helstoski,635 F. 2d 200, 203-204 (3d Cir. 1980); *425 United States v. Rundle,383 F. 2d 421, 424 (3d Cir. 1967), cert. denied 393 U.S. 863 (1968); United States v. Reilly,456 F. Supp. 211, 215-217 (E.D. Pa. 1978). [6]
The 1973 extortion count against petitioner was dismissed without any adjudication on the merits. Inadmissible evidence, although sufficient as the *426 basis of a statutory notice for jurisdictional purposes, see Avery v. Commissioner,574 F. 2d 467 (9th Cir. 1978); Rosano v. Commissioner,46 T.C. 681, 687 (1966), is not sufficient to satisfy respondent's evidentiary obligation under the "naked assessment" rule. Dellacroce v. Commissioner,83 T.C. 269, 280-284 (1984). The Third Circuit "naked assessment" cases have looked only at the evidentiary record to ascertain whether respondent satisfied his minimal evidentiary burden. SeeWalker v. Commissioner,supra;De Cavalcante v. Commissioner,supra,620 F. 2d at 28; Gerardo v. Commissioner,supra,552 F. 2d at 554. Once excluded, hearsay and other evidence inadmissible in this Court are not a part of that record. Without any idea of what evidence the grand jury considered, we do not think that its indictment, which may permissibly rest wholly on inadmissible evidence, standing alone, can satisfy respondent's minimal evidentiary threshhold required by Gerardo,Walker, and De Cavalcante. Neither do the facts of petitioner's elected position, his acquaintance *427 with Griffith, and his 1974 extortion of money from Insana provide a sufficient evidentiary nexus to tie petitioner to the alleged 1973 extortion of money from Griffith. We must find for petitioner on this issue, and we hold that there is no deficiency for 1973. Respondent has already conceded the fraud addition for that year. 1974
Regarding 1974, petitioner's guilty plea to the extortion charge collaterally estops him from disputing in this proceeding all essential elements of the extortion offense that also pertain to the disputed issues in this proceeding. Tomlinson v. Lefkowitz,334 F. 2d 262, 264 (5th Cir. 1964), cert. denied 379 U.S. 962 (1965); Arctic Ice Cream Co. v. Commissioner,43 T.C. 68, 75 (1964); Amos v. Commissioner,43 T.C. 50 (1964), affd. 360 F. 2d 358 (4th Cir. 1965); Monjar v. Commissioner,13 T.C. 587, 614-617 (1949). [7]See generally, Commissioner v. Sunnen,333 U.S. 591 (1948); Estate of Best v. Commissioner,76 T.C. 122, 133-141 (1981). Thus, petitioner may not deny that he unlawfully and wrongfully used his public *428 office to extort money or property from Insana. See 18 U.S.C. § 1951(b)(2) (1982); [8]United States v. Scacchetti,668 F. 2d 643, 647 (2d Cir. 1982), cert. denied 457 U.S. 1132 (1982); United States v. Cerilli,603 F. 2d 415, 425-426 (3d Cir. 1979), cert. denied 444 U.S. 1043 (1980); United States v. Kenny,462 F. 2d 1205, 1228-1229 (3d Cir. 1972), cert. denied sub nom. Kropke v. United States,409 U.S. 914 (1972). *429 Petitioner's personal receipt of or benefit from the extorted sum is not an element of the offense of extortion, so petitioner is not estopped from denying that he personally received the money from Insana. SeeUnited States v. Green,350 U.S. 415, 420 (1956); United States v. Cerilli,supra,603 F. 2d at 420; United States v. Provenzano,334 F. 2d 678, 686 (3d Cir. 1964), cert. denied 379 U.S. 947 (1964). Nonetheless, an extortionist normally receives the fruits of his criminal activities, and it might be reasonable to assume that petitioner likewise collected his. There has been no suggestion that the money was paid to a political party or to some other middleman, so we need not discuss the doctrine of constructive receipt of income. More importantly, here petitioner effectively admitted in the court proceedings before the Federal District Judge who accepted his guilty plea that he did the acts charged in the 1974 extortion indictment. One of the acts so charged was obtaining the $67,500 from Peter Insana. Thus, his admission is strong evidence that petitioner received this sum from Insana. Barrasso v. Commissioner,T.C. Memo. 1978-432, *430 affd. sub. nom. De Cavalcante v. Commissioner,620 F. 2d 23 (3d Cir. 1980). Since the exact amount of the property or money extorted is not an element of the crime under 18 U.S.C. § 1951, petitioner can challenge the amount in this proceeding. However, petitioner admits that he received at least $1,500 from Insana that he failed to report on his 1974 return. Also, petitioner's guilty plea under 26 U.S.C. § 7206(1), while not dispositive, is one of the facts to be considered. Wright v. Commissioner, 84 T.C.     (filed April 8, 1985). Petitioner has presented no evidence to persuade us that he received less than the $67,500 charged in the indictment. We are wholly unpersuaded by petitioner's self-serving claim in this Court that he received only $1,500 from Insana. Petitioner's testimony was vague, conclusory and occasionally contradictory. For example, while he admitted receiving $1,500 from Insana, he tried to suggest that this was some type of political contribution. However, on cross examination, he conceded that he could use the money from Insana for any purpose he chose. He also testified that *431 he had pleaded guilty only to receiving $1,500 from Insana. The transcript of the proceedings before the District Court Judge was strikingly silent about any $1,500 or any other specific figure. Count Two, which was discussed, contained the figure of $67,500. The District Court Judge questioned petitioner at length to assure that petitioner understood that he was admitting that he was guilty of the act as charged. This Court, having the opportunity to observe petitioner's demeanor as a witness and to question him, did not believe his testimony that he thought he was pleading guilty to receipt of only $1,500. This Court is satisfied that this story is a belated fabrication by petitioner to try to minimize his tax liability. Petitioner's criminal convictions, particularly his section 7206(1) offense (for a statement falsely made under penalty of perjury on his 1974 tax return) render petitioner's credibility suspect. See Rule 609(a), Fed. R. Evid.This Court's own observations confirm his lack of credibility. Petitioner has established no error in respondent's 1974 deficiency determination, *432 Rule 142(a), and we find that he received $67,500 from Insana in 1974. In accordance with respondent's concession, we find no deficiency or addition to tax for 1975. [9]
In his petition, petitioner assigned no error as to the fraud determination for 1974 and at trial he stipulated that he is liable for the 1974 fraud addition. He contested only the amount of the deficiency or underpayment for 1974 to which the fraud addition would apply. This concession may have been based on petitioner's earlier belief that the section 7206(1) conviction for 1974 collaterally estopped him from contesting the section 6653(b) fraud addition. Goodwin v. Commissioner,73 T.C. 215 (1979); Considine v. Commissioner,68 T.C. 52 (1977) (Considine I). [10] In any event, on brief, petitioner sought to argue the fraud addition as well. Citing Considine v. United States,683 F. 2d 1285 (9th Cir. 1982) (Considine III), petitioner argues that his section 7206(1) conviction *433 does not establish all requisite elements of the civil fraud addition and that respondent has not proven that any underpayment in 1974 was due to petitioner's intent to evade his Federal income taxes. Ordinarily, we would not after trial relieve a party of his stipulation conceding an issue upon which his opponent bears the burden of proof. However, this Court has recently changed its position on the collateral estoppel effect of a conviction or guilty plea under section 7206(1). Wright v. Commissioner,supra, overruling Goodwin v. Commissioner,supra, and Considine v. Commissioner,supra (Considine I). For that reason, we would even at this point relieve petitioner of his stipulation and perhaps reopen the record if respondent wished to offer additional evidence on the 1974 fraud issue as to which he bears the burden of proof. However, we think that is unnecessary here. Under all of the facts of record here, we think that respondent has in any event satisfied his *434 burden of proof. We now agree that the intent to evade taxes is not an element of the crime charged under section 7206(1). Wright v. Commissioner,supra; Considine v. United States,supra (Considine III); Considine v. United States,227 Ct. Cl. 77, 645 F. 2d 925 (1981) (Considine II). However, under the rule of collateral estoppel articulated by the Ninth Circuit, the United States Court of Claims (now the United States Court of Appeals for the Federal Circuit), and finally by this Court, petitioner's conviction (or guilty plea) under section 7206(1) does establish that petitioner wilfully filed a false return in 1974 in that he failed to report a substantial amount of income for that year. Petitioner has admitted receiving $1,500 from Insana in 1974 that he did not report on his 1974 return. Thus, whether by collateral estoppel or by admission, petitioner's underpayment of tax for 1974 has been established by clear and convincing evidence, satisfying the first part of respondent's fraud burden. See Hebrank v. Commissioner,81 T.C. 640, 642 (1983). *435 The fraud envisioned by section 6653(b) is "actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939), followed on remand 45 B.T.A. 822 (1941). Respondent must show that petitioner intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968). Fraud is a factual question to be determined on the basis of the entire record. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980). Since direct proof is rarely available, petitioner's entire course of conduct must be considered, and his fraudulent intent can be established by circumstantial evidence. Spies v. United States,317 U.S. 492 (1943); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Wholly apart from any collateral estoppel from his section 7206(1) conviction, *436 we think that respondent has adequately proven petitioner's fraudulent intent in 1974. Petitioner's omission of $67,500 of taxable income while reporting only $2,348.49, even though for only a single year, strongly evidences petitioner's intent to evade his legitimate tax obligation. See Meldon v. Commissioner,225 F. 2d 467, 470, 473 (3d Cir. 1955); Dorsey v. Commissioner,33 B.T.A. 295 (1935); Tanner Oil Co. v. Commissioner,20 B.T.A. 794, 795 (1930). This omission takes on additional evidentiary weight because it is income from an illegal activity--extortion. McGee v. Commissioner,519 F. 2d 1121, 1126 (5th Cir. 1975), affg. 61 T.C. 249 (1973); Berlin v. Commissioner,42 T.C. 355, 357 (1964); Estate of Brame v. Commissioner,25 T.C. 824, 831 (1956), affd. per curiam 256 F. 2d 343 (5th Cir. 1958). Petitioner is estopped by his guilty plea under 18 U.S.C. § 1951 to deny that he illegally extorted money from Insana. Moreover, in the District Court proceeding he admitted under oath that he did and that he knew what he *437 was doing. He is also estopped by his guilty plea under section 7206(1) to deny that he wilfully filed a false return in 1974 in that he omitted a substantial amount of income from that return. Since no part of the extortion payments was reported on his tax return for that year and since petitioner at trial offered no explanation for his failure to report that income, the only reasonable conclusion we can reach from these facts is that petitioner intended to evade his Federal income taxes. Considine v. United States,supra,683 F. 2d at 1287-1288 (Considine III); Considine v. United States,supra,645 F. 2d at 931-932 (Considine II). Thus, when we examine the record, even without petitioner's stipulation that he was liable for the fraud addition, we are satisfied that respondent has established by clear and convicting evidence that petitioner is liable for the fraud addition for 1974. To reflect the foregoing, Decision will be entered for the petitioner as to the years 1973 and 1975.
Decision will be entered for the respondent as to the year 1974.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner's testimony as to why he signed these contracts was vague, confusing, and conflicting. However, the Court rejects his testimony that he just signed as a "witness." The record is singularly devoid of precise information as to the respective authority and relationships between and among the Swoyersville Borough Council, the Luzerne County Redevelopment Authority, and the Swoyersville Municipal Authority, matters that were peculiarly within the knowledge of petitioner himself. However, as will be discussed below, the essence of the crime to which petitioner pled guilty (18 U.S.C. § 1951↩) involved his use of his public office to extort property or money.
3. Despite the clear statements in the District Court transcript, petitioner testified in the present case that he thought he was pleading guilty to omitting from his 1974 return only a $1,500 payment from Insana. We did not believe his testimony. There is nothing in the transcript of the District Court proceeding about $1,500. However, some person or persons unknown have written "$1,500" on pages 1, 5, and 9 of the transcript. Those handwritten additions and other handwritten markings on the exhibit are not part of the evidentiary record and have been disregarded by this Court. ↩
4. Count One of the July 22, 1977 grand jury indictment had charged petitioner as follows: 1. At all times pertinent hereto, the defendant, JOSEPH PIAZZA was Chairman of the Swoyersville Borough Council. 2. From on or about March 9, 1973 to on or about May 9, 1973, in the Middle District of Pennsylvania, the defendants, JOSEPH PIAZZA unlawfully, wilfully and knowingly did obstruct, delay and affect and did attempt to obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce, that is, construction equipment, materials and supplies, by extortion, in that the defendant, in his position as Chairman of the Swoyersville Borough Council, did obtain property that was not due him in the form of money in the amount of approximately $47,600 from Dalton Leroy Griffith, President, C.G. Grant Construction Company, with his consent, such consent being induced under color of official right. In violation of Title 18, United States Code, Sections 1951 and 2. Counts Three and Five of the indictment had charged petitioner with wilfully making false statements on his 1973 and 1975 Federal income tax returns.↩
5. We note that neither party has mentioned the statute of limitations, and we assume it was extended by agreement of the parties. In any event, the statute of limitations is not jurisdictional but is an affirmative defense that must be pleaded. Rule 39; Badger Materials, Inc. v. Commissioner,40 T.C. 1061, 1063 (1963), withdrawing in part and modifying 40 T.C. 725 (1963); United Business Corporation of America v. Commissioner,19 B.T.A. 809, 831-832 (1930), affd. 62 F. 2d 754 (2d Cir. 1933), cert. denied 290 U.S. 635 (1933). Of course, if respondent proves fraud, the tax and fraud additions may be assessed "at any time." Sec. 6501(c)(1). That a year is time barred absent fraud can be critical. In that situation respondent must first prove an underpayment of some amount of tax and that the underpayment was due to fraud (sec. 6653(b), sec. 6501(c)(1)); if respondent fails to prove those two elements of fraud, that ends the case and we need not address the correctness of the underlying deficiencies. But even where fraud must be proved to lift the bar of the statute of limitations, petitioner still bears the burden of proving error in the deficiency determination, but we must take care not to bootstrap a finding of fraud upon a taxpayer's failure to carry his burden of proof with respect to the deficiency. SeePhillips v. Commissioner,T.C. Memo. 1984-133↩ and cases cited therein. Where the years are open without regard to fraud, both parties may fail to sustain their respective burdens of proof.
6. We think that the decision in Laino v. United States,633 F. 2d 626 (2d Cir. 1980), is distinguishable. There, the Second Circuit's determination that there had been no "naked assessment" was based only in part on a count of a grand jury indictment against the taxpayer dismissed in a plea bargain. More importantly, the indictment there was by a state grand jury, which was subject to dismissal before trial based on the court's ruling regarding the sufficiency of the evidence. SeePeople v. Potwora,44 A.D. 2d 207, 354 N.Y.S. 2d 492↩ (1974), and cases cited therein. As discussed above, an indictment by a Federal grand jury is not subject to such evidentiary standards and pretrial review.
7. See also Purvis v. Commissioner,T.C. Memo. 1983-376; Nell v. Commissioner,T.C. Memo. 1982-228; Barrasso v. Commissioner,T.C. Memo. 1978-432, affd. sub nom. De Cavalcante v. Commissioner,620 F. 2d 23 (3d Cir. 1980); Keogh v. Commissioner,T.C. Memo. 1975-197↩. 8. § 1951. Interference with commerce by threats or violence
(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by * * * extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both. (b) As used in this section-- * * * (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.↩
9. Petitioner testified that he did not see Insana at all in 1975. For this reason, we determined that he got the entire sum in 1974 rather than over the two-year period.↩
10. As will be discussed below, these two cases were recently overruled by this Court. Wright v. Commissioner,↩ 84 T.C.     (filed April 8, 1985).