JOSEPH VESSIO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vessio v. Commissioner
Docket No. 21946-87
United States Tax Court
T.C. Memo 1990-327; 1990 Tax Ct. Memo LEXIS 338; 59 T.C.M. (CCH) 1038; T.C.M. (RIA) 90327; June 27, 1990, Filed *338 An appropriate order will be issued denying respondent's motion. Jared J. Scharf, for the petitioner. George H. Soba, for the respondent. WELLS, Judge. WELLS
SUPPLEMENTAL MEMORANDUM OPINION The instant case is before us on respondent's motion for reconsideration. In our prior memorandum opinion in the instant case, T.C. Memo. 1990-218, filed on April 30, 1990 ("prior opinion"), we upheld respondent's deficiency determinations against petitioner, holding that petitioner had failed to carry his burden of proof, but held that respondent had failed to carry his burden of proving by clear and convincing evidence that petitioner fraudulently underpaid his taxes. Accordingly, we did not sustain the fraud additions determined under section 6653(b). Respondent asks that we reconsider our holding regarding the fraud additions. Upon reconsideration, however, we adhere to the holding of our prior opinion. As we stated in our prior opinion, in order to be entitled to the fraud addition, respondent must prove, by clear and convincing evidence, two elements. He must prove (1) an underpayment for the year in issue and (2) that at *339 least a part of the underpayment is fraudulent. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). In our prior opinion, we held that respondent had failed to prove the first element for either of the years in issue, 1983 and 1984. We explained, "Although respondent has linked petitioner to loansharking and bookmaking in those years, respondent has not adduced clear and convincing evidence that the activities were indeed profitable in either of those years. * * * We cannot simply presume that petitioner's activities produced income in the years in issue and apply the fraud additions on that basis." (Emphasis in original; fn. ref. omitted.) Respondent contends that the foregoing holding was substantially erroneous. In support of his contention, respondent first argues that he "provided substantive evidence proving the petitioner received income in each of the taxable years 1983 and 1984." Respondent did provide substantive evidence linking petitioner to illegal activity in the years in issue; such a showing was made at trial, and our prior opinion so finds. The substantive evidence provided by respondent, however, merely entitles the notice of deficiency *340 to its presumption of correctness; it does not prove that petitioner had income in the years in issue as respondent's statement implies. Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981). Respondent argues that such evidence should satisfy his burden of proving underpayments for the years in issue. We do not agree. Respondent's burden cannot be met merely by the introduction of evidence that petitioner engaged in illegal transactions for the years in issue. Respondent next argues that "Petitioner has failed to produce any evidence of off-setting losses, deductions, credits, and/or exemptions * * *." In support of his argument, respondent cites Holland v. Commissioner, 348 U.S. 121 (1954); United States v. Nathan, 536 F.2d 988 (2d Cir. 1976); Siravo v. United States, 377 F.2d 469 (1st Cir. 1967); Bourque v. Commissioner, T.C. Memo. 1980-286; and Barrasso v. Commissioner, T.C. Memo. 1978-432, affd. sub nom. De Cavalcante v. Commissioner, 620 F.2d 23 (3d Cir. 1980). In each of those cases, however, the government utilized some accepted method of reconstructing *341 income. In United States v. Holland, supra, the government used the net worth method, while in the other cases cited by respondent, the government established that the taxpayer(s) had understated the gross receipts of a business, and the taxpayer(s) then failed to prove expenses that offset such receipts. For example, in Bourque v. Commissioner, supra, upon which respondent relies, we stated, The gross receipts from the sale of scrap have been stipulated, and they are substantially in excess of the amounts reported. It is uniformly the rule, even in criminal tax evasion cases where the Government bears the greater burden of proof beyond a reasonable doubt, "that evidence of unexplained receipts shifts to the taxpayer the burden of coming forward with evidence as to the amount of offsetting expenses, if any." [Citations omitted.]
Similarly, in Siravo v. United States, supra at 471, the government had proved unreported gross receipts from a jewelry business. In the instant case, by contrast, respondent did not reconstruct income by using gross receipts, or, for that matter, by using any other accepted, indirect *342 method of income reconstruction. Rather, he determined simply that cash seized from petitioner by the police represented income for the years in issue. Thus, the cases cited by respondent are inapposite. While receipts by a business fairly may give rise to the inference that they represent income, we do not believe that, in the instant case, the seized cash should compel the same inference. The seized cash may or may not represent an accession to wealth (e.g., it may represent a return of capital). Even if the seized cash does represent income, the question of when the income was received remains -- a question not presented in cases involving receipts or deposits because the period during which the receipts or deposits occurred can be ascertained readily. In our prior opinion we noted that we had been unable to find a case holding that mere evidence of seized cash constitutes clear and convincing proof of an underpayment and that in certain cases involving seized cash in which we had found fraud, respondent had utilized some accepted, indirect method of reconstructing income, such as the cash expenditures method, rather than relying solely upon the seized cash to prove an *343 underpayment. Despite the invitation implicit in our statement, respondent also has failed to cite any authority for the proposition that mere evidence of seized cash satisfies his burden of proving an underpayment. In fact, one case cited by respondent, United States v. Nunan, 236 F.2d 576 (2d Cir. 1956), draws a sharp distinction between income reconstruction based on receipts and income reconstruction based on a cash hoard, invalidating the latter for purposes of proving criminal tax fraud. The Second Circuit [1] explained, The mere possession of large amounts of cash or the expenditure of large amounts of cash may well arouse suspicion and speculation, but it is well settled that proof of this, standing alone, will not suffice to establish that the amounts involved constitute taxable income. * * * But *344 when unreported receipts in the indictment years are established by independent evidence, as here, the proof that the receipts derived from a taxable source may be made by proof of a likely source of taxable income, as in United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 * * *.
236 F.2d at 582 (citations omitted). Nonetheless, as noted in our prior opinion, we do not hold that evidence of seized cash can never suffice as proof of an underpayment. In the instant case, however, we believe circumstances raise sufficient doubt to prevent respondent from meeting his burden of proof. We found in our prior opinion that the notebook used by respondent to show that petitioner was a loanshark discloses a loss. We also found that the police and respondent concluded that a second notebook found at petitioner's home belonged to petitioner's father, raising the possibility that the seized cash may have belonged to the father as well. Moreover, petitioner's explanation for the seized cash, although insufficient to meet his burden of disproving respondent's deficiency determinations, was not implausible. In that regard, *345 we did not find in our prior opinion that petitioner's explanation for the seized cash was false. Rather, circumstances were such that evidence supporting and refuting petitioner's explanation was in equipoise, and petitioner therefore failed to carry his burden of proof. In sum, the record leaves us in doubt as to whether the seized cash represents income, much less income for the specific periods in issue. It should be noted that the issue of fraud presents a factual question which must be decided on the basis of an examination of all the evidence in the record. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Stratton v. Commissioner, 54 T.C. 255, 284 (1970). Finally, respondent argues that we erred by requiring respondent to show that petitioner's illegal activities were "profitable." In our prior opinion we stated, "Although respondent has linked petitioner to loansharking and bookmaking in those years, respondent has not adduced clear and convincing evidence that the activities were indeed profitable in either of those years." (Emphasis in original.) Respondent, however, has taken that *346 statement out of context. In the same paragraph of our prior opinion we explained, "We cannot simply presume that petitioner's activities produced income in the years in issue and apply the fraud addition on that basis." (Emphasis supplied; fn. ref. omitted.) Thus, we held that respondent failed to prove underpayments because he failed to show that petitioner's activities produced "taxable income" in the years in issue, not because respondent failed to show that petitioner's activities were profitable, as suggested by respondent. We adhere to our holding in our prior opinion because respondent failed to utilize an accepted method of reconstructing income, although at least under the circumstances of the instant case, such a showing was required in order to prove unreported taxable income in the years in issue. Accordingly, An appropriate order will be issued denying respondent's motion. Footnotes
1. The instant case is appealable to the Second Circuit. See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).