Thalia Kelly CONSIDINE and Charles Ray Considine

v.

The UNITED STATES.

No. 271–79T.

United States Court of Claims.

March 25, 1981.

As Amended April 21, 1981.

Nola McLane, Phoenix, Ariz., for plaintiffs; William Lee McLane, Phoenix, Ariz., attorney of record. McLane & McLane, Phoenix, Ariz., of counsel.

Donald P. Lan, Jr., Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser and Robert S. Watkins, Washington, D. C., of counsel.

Before DAVIS, Judge, SKELTON, Senior Judge, and SMITH, Judge.

## ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge:

Charles Ray Considine and Thalia Kelly Considine seek a refund of ordinary income taxes and of tax fraud penalties they paid to the Internal Revenue Service for 1966 and 1967. The major problem is whether this civil refund proceeding is controlled at all by Charles Considine's previous federal conviction for filing false returns for those years. There is also an ancillary question on plaintiffs' liability for income taxes on a deduction item as to which Mr. Considine was not found guilty.

The bare uncontroverted facts in these cross-motions for summary judgment are these:[1] The plaintiffs are residents of California. They filed joint federal income tax returns for the years 1965, 1966, 1967 and 1969, which the Commissioner of Internal Revenue determined had understated income and overstated deductions. In May 1972, Charles Considine (Considine) was indicted by a federal grand jury for willfully and knowingly making and subscribing those returns in violation of Internal Revenue Code § 7206(1).[2] On March 2, 1973, he was convicted on all counts of the indictment. The conviction was affirmed on appeal and the Supreme Court denied Considine's petition for certiorari.[3] Thereafter the Service issued statutory notices of deficiency asserting the 50% fraud penalty under I.R.C. § 6653(b) (1954).[4] Taxpayers paid the penalties for 1965, 1966, and 1967, and made timely applications for refunds. The Commissioner did not grant the requests and the plaintiffs brought this suit for the 1966 and 1967 penalties ($12,403 for 1966 and $2,851 for 1967).[5]

The dispute over the taxes and penalties owed for 1966 and 1967 involves unreported interest income of $9,975 for 1966, and a charitable contribution deduction of $20,781 to Tabor Academy taken in part in 1966,

---

1. Plaintiffs' motion is partial and goes only to the Government's defense of collateral estoppel on the basis of the criminal conviction. Plaintiffs urge that there should be a trial on all the substantive issues. However, the parties entered into a stipulation of further facts on which the Government relies and which we consider later in this opinion.

2. 26 U.S.C. 7206(1) provides in relevant part:
   Fraud and false statements.
   Any person who—
   (1) Declaration under penalties of perjury. —Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * * shall be guilty of a felony * * *.

3. *United States v. Considine*, 34 AFTR2d 74–5412, 74–2 USTC 85,073 (S.D.Cal.), aff'd 502 F.2d 246 (9th Cir. 1973), cert. denied, 416 U.S. 970, 94 S.Ct. 1992, 40 L.Ed.2d 558 (1974).

4. SEC. 6653. Failure to pay tax.
   (b) Fraud.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).

5. There is a dispute whether the suit as originally filed demanded or could demand return of income taxes themselves. *See* Part III, *infra*.
   For 1965, suit was brought and partial summary judgment was granted for the defendant in the District Court for the Southern District of California, Civil No. 79–076–GT, (unpublished order of March 18, 1980). For the 1969 year, action was brought in the Tax Court and taxpayers' claim rejected if the Commissioner proved an underpayment. *Considine v. Commissioner*, 68 T.C. 52 (1977).

with a $3,028.21 carryover to 1967. The District Court for the Southern District of California found in the criminal case[6] that Considine had reported $23,811, "whereas as he then and there well knew, he was required to report interest in the total amount of $33,786." Conclusion of Law No. 9. The difference is $9,975. As for the charitable donation, the District Court found that, "as he then and there well knew," Considine "was entitled to, at most, such a contribution claim of only $11,904.76. * * *" Conclusion of Law No. 10.[7] The court made comparable findings of fact.

## I

Inquiry into the bearing of the criminal conviction on the present civil proceeding is molded by the conceded and significant difference between the criminal statute under which Considine was convicted and the civil provision for a fraud penalty. The former (§ 7206(1), *supra*) requires a knowing false statement in the return but it does not call for proof of an underpayment of the tax or of an intent to evade. *See, e. g., United States v. Anderson*, 254 F.Supp. 177, 183–85 (W.D.Ark.1966). The civil penalty statute (§ 6653(b), *supra*), on the other hand, adds these elements of intent to evade the tax[8] and of an underpayment. In the context of this difference taxpayers say that nothing in the criminal conviction is binding in the present proceeding, under either the principle of *res judicata* (claim preclusion) or that of collateral estoppel (issue preclusion). The Government first seemed to urge that the criminal judgment, without more, whol-

ly determined the entire substance of this civil suit (except perhaps for the underpayment), but in the end it has limited its defense to the application of issue preclusion (collateral estoppel) only to those specific issues actually tried and determined in the criminal case (not including intent to evade or existence of an underpayment). We confine our consideration to that narrower contention and agree with defendant on the point.

■ A. Apart from taxpayer's argument that issue preclusion or collateral estoppel can be applied only to "ultimate" issues which are the same as those in the current proceeding (a point we discuss in Part I, B, *infra*), there is no doubt that the proper elements for preclusion are present on the issues of whether the tax returns for 1966 and 1967 contained knowing falsifications of the amount of interest income received and the amount of charitable deductions claimed. There is issue preclusion, "whether on the same or a different claim," "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Restatement (Second) of Judgments, § 68 (Tent. Draft No. 1 1973); *see also Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).[9] In this instance, there is no need to discuss a third-party's right to invoke issue preclusion because the United States and Considine are the same parties in both actions. *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03, 60

---

6. The criminal trial was by the bench without a jury.

7. This conclusion amounted to a determination that the Government had not prevailed in the criminal case as to $11,904.76 of the charitable deduction to Tabor Academy. *See* Part III, *infra*.

8. The "fraud" element in section 6653(b), has been held to incorporate the concept that the taxpayer had an intent to evade the tax. *See, e. g. Irolla v. United States*, 182 Ct.Cl. 775, 778, 390 F.2d 951, 953 (1968) ("fraud" is "intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing"); *Considine v.*

*Commissioner, supra*, 68 T.C. at 61 n.8 (1977) (although § 6653(b) does not contain the words "with intent to evade tax," the term "fraud" embodies that element). Knowing falsification of a material item in the return is obviously an intentional wrongdoing (as used in *Irolla*) which can be related to the intent to evade (if that is proved).

9. Exceptions now irrelevant are enumerated in § 68.1 of the Restatement (Second) of Judgments, and, in part, in *Commissioner v. Sunnen, supra*, 333 U.S. at 599–601, 68 S.Ct. at 720–721.

S.Ct. 907, 916–17, 84 L.Ed. 1263 (1940).[10] The Ninth Circuit having affirmed and certiorari having been denied, the judgment in the criminal case is indisputably final, and there is no dispute as to its validity. There is no doubt, either, that issue preclusion can apply even though the former adjudication against the claimant was criminal and the later proceeding is civil. *E. g. Local 167, Int'l Brotherhood of Teamsters v. United States,* 291 U.S. 293, 298, 54 S.Ct. 396, 398, 78 L.Ed. 804 (1934); *Armstrong v. United States,* 173 Ct.Cl. 944, 968–972, 354 F.2d 274, 289–91 (1966); Restatement (Second) of Judgments, § 133, (Tent. Draft No. 7) (1980).

■ Two issues directly bearing on the fraud penalties were actually litigated and determined in the criminal case: first, the falsity of the returns' omission of some interest income and of the overstatement of a charitable deduction in the amount stated, and, second, Considine's knowledge of those falsities. *See* the District Court's conclusions of law Nos. 9 and 10, quoted *supra,* and its parallel factual findings. These determinations were essential to Considine's conviction under counts two and three of the indictment, covering 1966 and 1967,[11] as well as under the statute; Section 7206(1), *supra,* plainly punishes a false statement in a return if the taxpayer does not believe it to be true. These same issues have a direct impact on a finding of "fraud" under the fraud penalty provision—the findings of these knowing falsities plus proof of an intent to evade tax constitutes fraud. *See* note 8, *supra.* (Proof of an underpayment is also necessary for the fraud penalty).

The sum of it is that, as to these issues of knowingly false misstatement in the returns of income and of a charitable deduction, there would plainly appear to be issue preclusion in the present case.

■ B. Taxpayers deny this result because, they say, such collateral estoppel can be allowed only if "ultimate" facts are shown in the first case, and that is not so here because the "ultimate" fact for the fraud penalty is that the "underpayment * * * of tax * * * is due to fraud"—an issue not presented or determined in the criminal case. The first answer is that, even if we accept this sharp distinction between "ultimate" and "mediate" or "evidentiary" facts as important for collateral estoppel, we cannot agree with taxpayers' delineation of the "ultimate" facts shown in the earlier proceeding or to be shown in the present case.[12] Certainly, the knowing misstatement of income and of charitable deductions were "ultimate" facts in the earlier criminal case. They were squarely within the terms of § 7206(1), *supra,* essential to conviction, vigorously tried, and actually determined by the court.

In this fraud penalty action, we think that these questions are likewise "ultimate" facts. As the fraud penalty provision, § 6653(b), has been construed (see note 8, *supra* ), the "ultimate" facts for the statute in this case include (a) a knowing falsification in the return, (b) an intent to evade, and (c) an underpayment. The single term "fraud" in § 6653(b) thus consists of two separate parts—an intentional wrongdoing

---

**10.** On Mrs. Considine's position, *see* note 15, *infra.*

**11.** Count Two charged that, for 1966, Considine reported (a) interest income of $23,811.00 although he knew and believed the correct reportable interest income was $33,786.00, and (b) a contribution deduction to Tabor Academy of $20,781.31 although he knew and believed that he was not entitled to that deduction in any amount. (The District Court did not find a knowing falsification as to the full amount of the contribution deduction to Tabor Academy.)

Count Three charged that, for 1967, Considine reported a contribution deduction to Tabor Academy of $3,028.21 although he knew and

believed that he was not entitled to that deduction in any amount.

**12.** In *The Evergreens v. Nunan,* 141 F.2d 927, 928 (2nd Cir.), *cert. denied,* 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944), Learned Hand defined an "ultimate" fact as "one of those facts, upon whose combined occurrence the law raises the duty, or the right, in question" and a "mediate datum" as "a fact, from whose existence may be rationally inferred the existence of one of the facts upon whose combined occurrence the law raises the duty, or the right."

(including a knowing falsification) and an intent to evade (see note 8, supra), both of which may properly be called "ultimate" facts as to the fraud penalty. Where, as here, the issue of knowing falsification was thoroughly presented in the earlier case and actually determined and where, also as in this case, it is wholly foreseeable that a civil fraud penalty may be imposed after conviction, it is just and proper to treat the issue of knowing falsification as an "ultimate" fact in the subsequent fraud penalty proceeding.[13] Not only is this interpretation correct under the words of § 6653(b); it also harmonizes fully with the general policies of the doctrine of collateral estoppel (or issue preclusion) to avoid time-consuming, repetitious, and unnecessary litigation, to obtain consistency of result in successive cases, and to end controversies over particular issues. See, e. g., Armstrong v. United States, supra, 173 Ct.Cl. at 971–72, 354 F.2d at 290–91.

It is very doubtful, moreover, that a rigid separation of "ultimate" facts from "mediate" data or "evidentiary" facts is now tenable in the field of collateral estoppel or issue preclusion. The American Law Institute has said:

" * * * Such a formulation is occasionally used to support a refusal to apply the rule of issue preclusion when the refusal could more appropriately be based on the lack of similarity between the issues in the two proceedings. If applied more broadly, the formulation causes great difficulty, and is at odds with the rationale on which the rule of issue preclusion is based. The line between ultimate and evidentiary facts is often impossible to draw. Moreover, even if a fact is categorized as evidentiary, great effort may have been expended by both parties in seeking to persuade the adjudicator of its existence or nonexistence and it may well have been regarded as the key issue in the dispute. In these circumstances the determination of the issue should be conclusive whether or not other links in the chain had to be forged before the question of liability could be determined in the first or second action.

"The appropriate question, then, is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment. If so, the determination is conclusive between the parties in a subsequent action, unless there is a basis for an exception under § 68.1—for example, that the significance of the issue for purposes of the subsequent action was not sufficiently foreseeable at the time of the first action."

Restatement (Second) of Judgments, § 68, comment j (Tent. Draft No. 1, 1973); see also § 68.1(e)(ii); § 68.1 comment i and Reporter's Note to § 68, comment j at 167–69.[14] Under the Law Institute's formulation, there is plainly a bar to relitigation of the important issues actually raised and determined in the criminal case.

---

**13.** The plaintiffs have not asserted that the issues the Government seeks to preclude were either unimportant in or unnecessary to the former judgment nor that it was unforeseeable that these issues could resurface in the context of fraud penalty proceedings. The serious consequences of a § 7206(1) conviction insured the significance of these issues, which were at the heart of the indictment against Considine. Moreover, in unsuccessfully petitioning the District Court (in the criminal case) to permit evidence of plaintiff's lack of intent to evade taxes, Considine showed his awareness not only of the potential civil litigation to follow but also of the potential consequences of collateral estoppel.

**14.** This Reporter's Note points out (Tent. Draft No. 1, at 168) that the real dangers in attaching preclusive effect to subsidiary findings are (1) that such effect will be given to determinations of issues that were not seriously contested and may have been barely relevant and (2) that determinations may have wholly unforeseeable consequences. Neither of these dangers exists in the present case. See note 13, and text supra.

In Yates v. United States, 354 U.S. 298, 338, 77 S.Ct. 1064, 1087, 1 L.Ed.2d 1356 (1957), while the Supreme Court said that collateral estoppel is inoperative for merely evidentiary or "mediate" facts, its actual holding was that the matters of fact and mixed fact and law necessarily determined by the prior judgment were so remote from the issues in the second case that the trial judge could exclude them from evidence. That is, of course, not true here.

Collateral estoppel, then, bars plaintiffs from now contesting the fact that Considine knowingly falsified the amount of his interest income and the amount of the charitable deductions.[15]

## II

Defendant does not now urge that the criminal conviction determines all aspects of this case—only the knowing falsification of income and of a charitable deduction (Part I, *supra*). There remain, therefore, the questions whether there were (a) underpayments of tax and (b) an intent to evade.[16] The first is quickly decided. The parties have stipulated that the plaintiffs had no additional deductions or credits, and that none of the items of income reflected on the returns are excludable. In addition, the stipulation affirms that, if (as we have just held) collateral estoppel applies to the knowing understatement of income and overstatement of deductions, there would be underpayments within § 6653(c)(1).[17]

The less simple question concerns the intent to evade tax. It is settled that, in this civil penalty suit, the Government has the burden of proving the plaintiff's fraud—which includes the intent to evade (*see* Part I, *supra*)—with clear and convincing evidence. *See, e. g. Irolla, supra*, 182 Ct.Cl. at 779, 390 F.2d at 953; *Powell v. Granquist*, 252 F.2d 56, 61 (9th Cir. 1958); I.R.C. § 7454(a). This burden may be met,

however, through circumstantial evidence. *Irolla, supra*, 182 Ct.Cl. at 779, 390 F.2d at 953–54; *Plunkett v. Commissioner*, 465 F.2d 299, 303 (7th Cir. 1972); *Powell, supra*, 252 F.2d at 61.

On the basis of the stipulated and undisputed facts plus the prior judicial determination that taxpayers knowingly falsified their returns so as to understate income and overstate deductions,[18] we find the necessary intent to evade tax. The stipulation in this case shows that Charles Considine was a very knowledgeable man. He received a Bachelor of Science degree in 1942 from the University of California at Berkeley, and later earned a Masters Degree in business economics. Since 1946, he has practiced as a certified public accountant in California. The defendant has also asserted (Defendant's Reply Brief, at 8), and the plaintiffs have not denied, that in addition, Considine has studied law, taught accounting and taxation, and conducted real estate seminars. His affidavit submitted in support of the plaintiffs' motion for summary judgment, containing citations to case law and to tax treaties, also suggests a high degree of sophistication in matters concerning real estate transactions and taxation. Combining this proof of Considine's expertise with the established facts that he knowingly understated his income and overstated his deductions leading to an underpayment,[19] we cannot avoid concluding that

---

**15.** Taxpayers have not argued to us that, if Mr. Considine is estopped, Mrs. Considine should be treated differently. *Cf. Considine v. Commissioner, supra*, 68 T.C. at 67–68, saying that the spouse of a convicted taxpayer filing a joint return need not necessarily be estopped.

**16.** All that *United States v. Anderson*, 254 F.Supp. 177, 183–85 (W.D.Ark.1966), held was that a conviction under § 7206(1) does not involve or determine the issue of intent to evade the tax. We have no reason to disagree with that view.

**17.** The parties also agreed that the amounts assessed, as corrected by the Commissioner (*see* note 22, *infra*), are accurate except for the $11,904.76 (not barred by estoppel) which is still in dispute (Part III, *infra*). We need not reach the question of whether collateral estoppel would extend to the precise amounts of money involved. *Compare Considine v. Com-*

*missioner, supra*, 68 T.C. at 62–65 and *United States v. Colacurcio*, 514 F.2d 1, 6 (9th Cir. 1975) (finding no collateral estoppel as to the amount), with *Considine v. United States, supra*, Civ. No. 79–076–GT, (S.D.Cal.1980) (finding estoppel as to the amount, without discussion).

**18.** In Part I, *supra*, we have held that those determinations can and should be accepted in this suit.

**19.** It is proper to combine proof made in this case with facts established by collateral estoppel. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–71, 71 S.Ct. 408, 413–15, 95 L.Ed. 534 (1951); *Adams v. United States*, 175 Ct.Cl. 288, 300–01, 358 F.2d 986, 993–94 (1966).

at the times he filed the returns he intended to evade. There is no alternative explanation nor is one proffered.[20] Considine's affidavit in this court protests merely that his deductions and omissions of income were legitimate. This is precisely the sort of argument that is precluded here because the District Court in the criminal case has already decided that Considine's tax returns were not merely wrong but also that he filed them believing them to be false.

■ Having thus found that Considine filed his returns falsely and fraudulently with an intent to evade tax, we must also hold the statute of limitations tolled on the collection of the entire tax including the penalty. I.R.C. §§ 6501(c)(1), *Lowy v. Commissioner*, 288 F.2d 517, (2d Cir. 1961), *cert. denied*, 368 U.S. 984, 82 S.Ct. 596, 7 L.Ed.2d 523 (1962); *Camien v. Commissioner*, 420 F.2d 283, 287–88 (8th Cir. 1970); *Friedman v. Commissioner*, 27 T.C.M. 714, 723–24, *aff'd per curiam*, 421 F.2d 658 (6th Cir. 1970).[21] *See also* note 26, *infra*.

It follows that plaintiffs cannot recover the relevant tax or fraud penalty (aside from corrections in the penalty[22] and changes due to the remand directed in Part III, *infra*).

## III

■ Our holding (Part II, *supra*) that the plaintiffs are liable for the § 6653(b) fraud penalty disposes of all aspects of this case except for taxes and penalties based on an $11,904.76 deduction for a charitable contribution to Tabor Academy. This $11,904 + is the amount that the Government failed to prove (beyond a reasonable doubt) was falsely claimed. *United States v. Considine, supra*, 34 AFTR2d at 74–5414–15, 74–2 USTC at 85,076, Conclusions of Law Nos. 7 & 10; Stipulation par. 18. See note 7 and text, *supra*. Collateral estoppel does not bar litigation over this amount. We are asked to determine whether a suit for a refund based on this money is properly before us, or whether it can or should be brought only after February 18, 1981, six months beyond the plaintiffs' third claim for a refund was assertedly filed.[23]

Plaintiffs have filed three sets of claims for refund. The first was limited to all of the fraud penalties they had paid for 1966 and 1967. The second covered the deficiency in tax owed for 1966 and 1967. The third claim, said to have been filed on August 18, 1980, incorporates the first two and also lists the separate items on which the claim is based. The plaintiffs say that, although they consider the first two claims to have been sufficiently specific, the third amends them in the event they were not. The defendant urges that the third claim does not amend the others, but is a new claim. As a separate new claim, it is untimely as to the penalties, and since six months had not passed (by the argument date) from its date of filing, it is too early for a suit on the tax itself. As for the first two sets of refund claims, defendant contends that a suit based on the $11,904 is at variance with those claims in that they did not specifically refer to this aspect, and as a result the plaintiffs are not entitled (under those refund claims) to a reduction of the fraud penalty or a refund of ordinary taxes based on the $11,904.

---

**20.** This is plainly not a case like that mentioned in Judge Featherston's dissent in *Goodwin v. Commissioner*, 73 T.C. 215, 235 (1979)—a taxpayer's willfully falsifying his return in order to cover up the source of an illegal kickback but likewise omitting a legitimate deduction so as not to underpay or evade his tax.

**21.** I.R.C. § 6501. Limitations on assessment and collection

(c) Exceptions.—

(1) False return.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

**22.** The parties have stipulated that, if the fraud penalty was properly assessed, the Commissioner erred in his calculation of the amount owed. In fact, the fraud penalty for 1966 should have been $7,697 and for 1967 should have been $487. Stipulation par. 18.

**23.** I.R.C. § 6532(a). The defendant says that it has been unable to verify the filing of the third claim. Under our disposition of the matter, we need not resolve this problem.

In our view, the first and second sets of claims do incorporate challenges to the penalty and to the tax based on the $11,904 deduction. In the first claim, the plaintiffs said (for 1966):[24]

The applicable statute of limitations bars collection of the $12,403 Section 6653(b) penalty for the year 1966. *There was no false or fraudulent return for 1966* with the intent to evade tax, and therefore no penalty is properly assessable. The statute of limitations is not opened under Section 6501(c)(1). [emphasis added]

They said further that even if they were wrong in their denial of fraud ("assuming arguendo that the Commissioner * * * could prove * * * "), the penalty was incorrectly computed.[25]

The plaintiffs' second claim says (for 1966):

The applicable statute of limitations bars collection of the $20,663 deficiency for the year 1966. *There was no false or fraudulent return for 1966* with the intent to evade tax. The statute of limitations is not open under Section 6501(c)(1). [emphasis added]

(The second claim for 1967 was similar but differed as to the figures.)[26]

We recognize the importance of the requirement that claims be specific so that they prevent surprise, give adequate notice to the Internal Revenue Service, and grant the Service a chance to correct errors and limit litigation. *Cook v. United States*, 220 Ct.Cl. ——, ——, 599 F.2d 400, 406 (1979); *Union Pacific R. R. v. United States*, 182 Ct.Cl. 103, 109, 389 F.2d 437, 442 (1968). But though the plaintiffs' first two sets of claims do not break down their general denials of falsity and fraud item by item, they seem clearly to encompass and deny all of those elements of falsity and fraud that

the Commissioner charged them with—including the deduction of the gift to Tabor Academy. Until this court's ruling today that the plaintiffs are liable under § 6653(b) for all but $11,904.76 of their claims, they had no reason to isolate this amount from the rest. It was nevertheless, in our view, included in the denials of any fraud or falsity in both the first and the second sets of claims, and the Commissioner was adequately alerted to the challenge to the entire amount, including this $11,904 portion. *See, e. g. Harlan v. United States*, 160 Ct.Cl. 209, 218, 312 F.2d 402, 408 (1963). As we have pointed out, in Considine's criminal case the Government failed to prove beyond a reasonable doubt that the $11,904.76 had been deducted with knowledge of its falsity. That the District Court singled out this amount provided additional and explicit notice that it would remain in contention. The first two sets of refund claims (as well as the third) were filed after the criminal conviction and obviously in its light (including its finding that the Government's proof failed as to $11,904.76). Thus, the Service should have known that the plaintiffs were seeking refund of the $11,904.76 item both as to income tax and as to the fraud penalty.

The refund claim as to the $11,904.76 is therefore properly in this court with respect both to the fraud penalty based on that item and also as to taxpayers' income tax liability for it. The Trial Division will have to determine whether or not taxpayers were entitled to that deduction and whether or not a fraud penalty could be based on it. We do not, of course, decide or have any view on the issues of whether fraud under § 6653(b) should be found in this civil suit with respect to the $11,904.76 or whether taxpayers were entitled to that deduction.

---

**24.** The claim for 1967 was similar but differed in its figures.

**25.** The defendant concedes that the computation was incorrect. *See* note 22, *supra*.

**26.** Although the second set of claims, and plaintiffs' First Amended Petition, filed September 17, 1980, seek refunds of the entire deficiency in ordinary income, the parties' briefs address only the contested $11,904.76 deduc-

tion. We note, nevertheless, that because of our finding that the plaintiffs filed false and fraudulent income tax returns for 1966 and 1967 with an intent to evade tax, the statute of limitations as to the deficiency in ordinary tax—apart from the contested $11,904.76—is tolled and the plaintiffs' request for a total refund based on the statute of limitations must be denied.

IV

Partial summary judgment is granted to the defendant, subject to further modification at trial under this opinion. We send this case to the Trial Division for a determination of the amount of the refund owing to the plaintiffs. In that connection, the trial judge should adjudicate the legality of the claimed $11,904.76 charitable contribution deduction still in dispute. Depending on the outcome, the plaintiffs could be entitled to a reduction in the fraud penalty they paid and to a refund of ordinary taxes paid after disallowance of that deduction. Whatever the outcome on those issues, the plaintiffs are entitled to a refund based on the stipulated corrections to the penalties they owed. The parties' motions for summary judgment are granted and denied in accordance with this opinion and the foregoing disposition.