In re James M. WILLIAMS, Jr. and Carroll Williams, Debtors.

James M. WILLIAMS, Jr. and Carroll Williams, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 91–10360–8P7.
Adv. No. 91–750.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 31, 1994.

A. Paul Molle, Clearwater, FL, for debtors.

Robert Genzman, Washington, DC, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a Complaint filed by James M. Williams, Jr. and Carroll Williams (Debtors) in which they seek a determination of the dischargeability of their federal income tax liabilities for the tax years 1980 through 1984 (excluding 1982). The United States of America through the Internal Revenue Service (Government) contends that the Debtors willfully attempted to evade or defeat those taxes within the meaning of § 523(a)(1)(C) of the Bankruptcy Code, rendering those tax liabilities nondischargeable. The facts relevant to the resolution of the claim of nondischargeability as established at the duly noticed final evidentiary hearing are as follows:

The Debtors were married in August of 1982. The Debtor Dr. James Williams was employed as a physician during 1985 through 1990. The Debtor Carroll Williams was employed as an office assistant during 1985 through 1990. This Court is not aware of the Debtors' sources of income prior to 1985.

In 1983 and 1984, the Debtors invested in tax shelters consisting of two types of operations. The first was an operation called the "William M. Young Cow Program" which involved cow embryos from donor cows, and the second was an operation called "Century Concepts" which involved the lease of equipment to produce a video game. The tax shelters created tax benefits to the Debtors in the tax years 1983 and 1984 as well as in the tax years 1980 and 1981 through the carryback of investment credits to those years.

On September 28, 1984, the Government sent Dr. Williams a letter stating that the IRS had determined that the video game tax shelter was solely a tax-motivated transaction and not a legitimate investment. The letter also stated that the Government would examine the Debtor's return for the tax years indicated, and would reduce any refund claimed attributable to these tax shelters.

In 1986, Dr. Williams was audited by the Government, which audit involved the video game tax shelter. On November 9, 1987 the Government sent the Debtor an "Unagreed Report" which stated that the video game shelter investment credits are disallowed. In addition, the Debtors were also informed that the claimed credits and deductions attributable to the cow embryo shelter are also "disallowed pending the outcome of the examination of this investment." (Defendant's Exh. 8).

On March 9, 1988 the Government sent the Debtors a Form 950, or "30–day letter," which reflected proposed adjustments of taxes for the tax years 1980 through 1984, excluding 1982. (Defendant's Exh. 35). The Debtors' tax advisor then filed a protest letter regarding the adjustments in which the Debtors requested an administrative appeals conference. (Defendant's Exh. 34). Early in 1990, the administrative appeal was denied.

On June 4, 1990, the Government assessed additional taxes, interest and penalties for the tax years 1980 through 1984 (excluding 1982), and sent the Debtors notices of deficiency and a demand for payment. (Defendant's Exhs. 3 and 4). Notices of federal tax lien were filed on July 9, 1991.

It is without dispute that during the years 1984 through 1990, the Debtors had made various new investments and purchases. During that period, Dr. Williams invested in a partnership engaged in the business of furnishing medical testing equipment, in a Doctor's Hospital partnership, and acquired a rental house. In 1984 the Debtors purchased a new Cadillac, and in 1985, a new van. Also in 1985, the Debtors purchased a residence for about $205,000.00.

In July of 1985, Dr. Williams set up a wholly-owned professional association in order to limit his exposure to any potential malpractice claims and to take advantage of tax laws favoring pension plans available to professional associations. The professional association made several contributions totalling about $60,000.00 to the pension plan. Dr. Williams also made numerous gifts to family members in 1988 through 1990. Notwithstanding these numerous expenditures, the Debtors failed to pay the tax liabilities assessed against them.

The Debtors filed their voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on July 31, 1991. The Government then filed a timely proof of claim, the secured portion in the amount of $112,795.15 and an unsecured general claim in the amount of $58,585.33.

Based on the foregoing facts, the Government contends that the Debtors' tax liabilities should be excepted from the Debtors' general discharge, pursuant to § 523(a)(1)(C). The Government asserts that the Debtors failed to pay the tax liabilities or set aside funds to do so, notwithstanding the fact that they knew the taxes were due and owing and that they had a duty to pay the tax liabilities.

In determining whether the tax obligations in question are dischargeable, this Court must focus its analysis on section 523(a)(1) of the Bankruptcy Code which provides in pertinent part as follows:

### § 523(a)(1) Discharge of Debtor

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(C) with respect to which the debtor made a fraudulent return or **willfully attempted in any manner to evade or defeat such tax.**

■■ To accomplish the purpose behind the Bankruptcy Code, which is to provide the debtor with a fresh start, it is assumed that a debt is dischargeable unless the party complaining that the debt is nondischargeable meets the burden of proving nondischargeability. *Tilley v. Jessee,* 789 F.2d 1074 (4th Cir.1986). The standard of proof required in adversary proceedings brought under 11 U.S.C. § 523(a)(1)(C) is a preponderance of the evidence. *Grogan .v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *Stoltzfus v. U.S.,* 398 F.2d 1002, (3rd Cir. 1968), *cert. denied,* 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969); *In re Kirk,* 98 B.R. 51 (Bankr.M.D.Fla.1989).

■ To prove fraud the Government must show that the taxpayer acted with specific intent to evade a tax believed to be owing. *Korecky v. Commissioner,* 781 F.2d 1566, 1568 (11th Cir.1986). The Government must establish (1) knowledge of the falsehood of the return (2) an intent to evade the taxes and (3) an underpayment of the tax. *Considine v. U.S.,* 645 F.2d 925, 929, 227 Ct.Cl. 77 (1981), cert. denied 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982).

■ Applying the foregoing principles, it is clear that this is not the case of a fraudulent return, but it is merely a failure to pay a tax due and owing where the taxpayer was aware of the obligation to pay the tax in question. Obviously this would not be sufficient to except the liability from the general discharge under § 523(a)(1)(C) because no debtor who owes taxes to the Government would be entitled to the protection of the general Bankruptcy discharge.

However, when a taxpayer is aware of a tax liability and has the means to pay the taxes due, it is a horse of a different color. But in the present instance, all investments were made by the Debtors between 1984 and 1990 during the period in which the deficiency claim of the Government was in dispute and was being contested by the Debtor.

There is no evidence of similar investment activity after 1990 when the additional taxes were finally determined. This being the case, this Court is satisfied that the Government failed to establish with the requisite degree of proof the operating elements of § 523(a)(1)(C). Accordingly, the claim of non-dischargeability cannot be sustained.

A separate final judgment will be entered in accordance with these findings.

DONE AND ORDERED.