Paul A. BILZERIAN and Terri
L. Steffen, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 91–1076T.

United States Court of Federal Claims.

June 12, 1998.

Paul A. Bilzerian, Tampa, Florida, pro se.

B. Gray Gibbs, St. Petersburg, Florida, for Terri L. Steffen.

Elizabeth D. Depriest, Tax Division, U.S. Department of Justice, Washington, DC, for defendant. Thomas D. Sykes, Tax Division, U.S. Department of Justice, Washington, DC, of counsel.

## OPINION

SMITH, Chief Judge.

Paul Bilzerian and his wife, Terri Steffen, filed this suit to recover taxes, penalties, and interest that they claim were erroneously and illegally assessed against them when the Internal Revenue Service (IRS) denied a deduction on their 1985 tax returns. The disputed deduction arises out of a $125,000 payment made in 1985 by Paul Bilzerian (Bilzerian) to Jefferies and Company (Jefferies), a stock broker. Bilzerian claims that this payment qualified as an "ordinary and necessary business expense" and was thus deductible under 26 U.S.C. § 162(a). The government argues, however, that the pay-

ment was made in furtherance of an illegal stock parking agreement[1] between Bilzerian and Jefferies and thus was nondeductible under 26 U.S.C. § 162(c)(2).

In 1989 Bilzerian was convicted of conspiracy to defraud the IRS and the Securities and Exchange Commission (SEC). One of the objectives of the conspiracy related to the $125,000 payment at issue in this case. This court ordered a separate briefing schedule and oral argument on the issue of collateral estoppel in order to determine the effect of the prior criminal conviction on the present case.[2]

## FACTS

### A. The Robertson Transaction

In the mid-1980s, Bilzerian was engaged in the business of buying and selling securities. During July 1985, he transferred 58,000 shares of H.H. Robertson common stock to the partnership of Bilzerian and Brodovsky (the Partnership), of which Bilzerian owned 99.9%. The Partnership sold the Robertson stock to Jefferies for $30.50 per share. The market price of the stock continued to decline such that, on August 22, it was only $26.875 per share. Jefferies later sold the stock, realizing a loss of approximately $250,000 in the process. Representatives of Jefferies demanded compensation for any and all losses suffered by Jefferies in the Robertson transaction.

On or about December 24, 1985, Bilzerian made the $125,000 payment at issue in the instant case to compensate Jefferies for the balance of its losses. On their 1985 tax return, Bilzerian and his wife deducted their pro-rata share (99.9%) of the $125,000 payment made to Jefferies as an ordinary and necessary business expense.

---

1. "Parking" of stock (or "stock parking") is generally defined as "[t]ypically a sham transaction when a broker-dealer (or other person) transfers stock to a customer's account or to another broker-dealer and subsequently repurchases the stock without a loss to the person with whom the stock was 'parked.'" V Louis Loss & Joel Seligman, Securities Regulation 2147–48 (3rd ed.1990).

2. Only plaintiff Bilzerian was convicted, but the government would like to estop him from denying that he entered into an illegal agreement in the plaintiffs' present case against the government.

## B. The Criminal Conviction

On June 9, 1989, a jury in the United States District Court for the Southern District of New York convicted Bilzerian of nine counts for various violations of the securities laws, the federal false statements statute, and the criminal conspiracy statute. The indictment was in connection with Bilzerian's dealings concerning the common stock of Cluett Peabody & Co., Inc. (Cluett), Hammermill Paper Co., Armco, Inc. (Armco), and H.H. Robertson Co. (Robertson). The Second Circuit affirmed the conviction on appeal. *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). On September 30, 1997, the Second Circuit affirmed the district court's denial of plaintiff Bilzerian's motion under 28 U.S.C. § 2255 for an order vacating his sentence and setting aside his criminal trial. *Bilzerian v. United States*, 127 F.3d 237 (2d Cir.1997). Plaintiff Bilzerian has filed a Petition for Rehearing of this decision as well as a Suggestion for Rehearing In Banc. The conduct at issue in the instant case involves the Robertson transactions and was set forth in count nine of the indictment.

Count nine of the indictment charged that Bilzerian "unlawfully, willfully, and knowingly" conspired to defraud the SEC and the IRS. An object of the conspiracy was "(a) to conceal [Bilzerian's] ownership of the 58,000 shares of [Robertson stock] from the [SEC and the IRS] and (b) to secretly compensate Jefferies and Company for a $250,000 trading loss." Part of the conspiracy involved impairing and impeding the legitimate functioning of both the IRS and the SEC. The indictment further charged that Bilzerian aided and abetted Jefferies in failing to make and keep such records for the SEC and also falsified and concealed information required by the SEC.

Count nine listed seven "Means of the Conspiracy" that relate to the Robertson stock.[3] According to the indictment, Bilzerian sold the Robertson shares to Jefferies with the understanding that Bilzerian would buy the stock back from Jefferies 31 days later for the cost of the stock, plus interest and commission, thereby eliminating any market risk to Jefferies. Part 69 of the indictment further stated that between October 15, 1985, and the end of that year, Bilzerian's associate generated approximately $125,000 in commissions for Jefferies which Jefferies used to offset half of its losses from the Robertson transaction. In addition, part 70 of the indictment stated that Bilzerian made a $125,000 payment to Jefferies with the understanding that Jefferies would refund the money in 1986 if Bilzerian's associate generated an additional $125,000 in commissions. In connection with this payment, the indictment stated that Jefferies sent a false and fictitious invoice for financial services to Bilzerian and Bilzerian then deducted the payment in his 1985 federal tax return as a "consulting fee." Part 71 of the indictment stated that in 1986, Bilzerian sent Jefferies two false and fictitious invoices for "consulting services."

In his instructions to the jury, the district court judge stated that in order to convict Bilzerian of conspiracy to defraud the IRS and SEC, the jury needed to find that, at some point in time, an agreement existed between Bilzerian and Jefferies to commit at least one of the objectives set forth in count nine by at least one of the means. The jury found Bilzerian guilty on count nine and all other counts.

## C. The Audit

Plaintiffs' 1985 tax return was subsequently audited and on October 13, 1989, the IRS issued a statutory notice of deficiency. The IRS disallowed the distributive share of the Jefferies payment deduction on the grounds that it was a payment made in furtherance of the illegal stock parking agreement between Bilzerian and Jefferies. In 1990, plaintiffs' account was assessed a total of $156,839.42.[4]

---

3. Count nine also dealt with the Armco transaction. The jury found Bilzerian guilty of conspiracy pursuant to count nine of the indictment with respect to both the Armco and the Robertson transactions. The sections of count nine relating to the Armco transaction need not be addressed.

4. The increase to plaintiffs' income taxes was $59,392.00. Accrued interest amounted to $37,-912.93. In addition, the Commissioner asserted an additional $14,848.00 for substantial understatement of income pursuant to 26 U.S.C. § 6661, a failure-to-pay penalty of $592.61, and a

Plaintiffs paid the IRS $160,729.44 and on July 27, 1990, plaintiffs filed two claims for refund of the taxes, interest, and penalties at issue.[5] Plaintiffs subsequently waived IRS notification of the disallowance of their claims and filed the instant suit.

## DISCUSSION

In the present case, the disputed issue is the legality of the $125,000 payment made by Bilzerian to Jefferies. The government contends that in convicting Bilzerian of conspiracy, the jury necessarily found that he entered into an agreement to defraud the SEC and IRS. Defendant argues that Bilzerian is collaterally estopped from denying that he entered into an illegal agreement. The payment, according to the government's theory, was made in furtherance of the conspiracy for which plaintiff was charged in count nine of the indictment, and was such an essential element of that conspiracy conviction that its illegality was fully determined in the prior case.

By contrast, plaintiffs argue that the payment's legality was not at issue in the prior criminal trial and was not necessary to the conspiracy conviction. Count nine of the indictment listed five alleged objectives and nine overt acts, of which the jury only had to find one objective and one overt act in order to return a guilty verdict. The jury never gave any indication as to how it reached its verdict. Plaintiffs also note that conspiracy to commit an offense is entirely separate from the substantive offense that is the object of the conspiracy.

### A. Issue Preclusion in General

■ Under the doctrine of collateral estoppel, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982); *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1090 (Fed.Cir. 1984).

■ This doctrine serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery*, 439 U.S. at 326; *see also Arkla, Inc. v. United States*, 37 F.3d 621, 623 (Fed.Cir.1994) ("Affording a litigant more than one full and fair opportunity for judicial resolution of the same issue results in an untenable misallocation of resources."), *cert. denied sub nom. NorAm Energy Corp. v. United States*, 514 U.S. 1035, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995). Every litigant, however, is entitled to his or her day in court. *See Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 275 (4th Cir.1980); 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4449, p. 417 (1981).

■ The Federal Circuit has adopted a four-part test to determine if collateral estoppel is appropriate:

(1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment, and (4) the party precluded ... was fully represented in the prior action.

*Mother's Restaurant Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983). Issues determined in a criminal proceeding

---

civil fraud penalty of $44,117.65 pursuant to 26 U.S.C. § 6653(b). The total of these assessments, net a $23.77 abatement of interest, amounted to $156,839.42.

**5.** The government argues that in 1990, plaintiffs had a credit balance of $115,381.76 in their 1985 account. The government further argues that on March 25, 1991, the IRS refunded plaintiffs $125,355.13 which comprised the 1985 credit balance plus interest. Subsequently, on April 15, 1991, unaware of the March, 1991 refund, the IRS inadvertently issued plaintiffs a second refund of the 1985 credit balance. In defendant's first amended answer and counterclaim, defendant's seek judgment against plaintiffs in the amount of $125,555.25 for the erroneous refund. This issue will not be addressed in this opinion.

may be given estoppel effect in a subsequent civil suit between the government and the former defendant. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 95 L.Ed. 534 (1951) (finding estoppel for questions distinctly put in issue and essential to the jury verdict in a criminal prosecution).

## B. The Mother's Restaurant Test

As discussed above, for this court to hold that re-litigation of the legality of the $125,000 payment is precluded in the instant case, the government must show that the identical issue was raised, fully litigated, and essential to the prior criminal conviction. As no contention has been made by either party as to the adequacy of plaintiff's representation in the prior action, our inquiry is limited to: (1) whether the legality of the payment is identical to the issues involved in the prior action; (2) whether the legality of the payment was "actually litigated" in the prior action, and (3) whether the determination as to the illegality of the payment was "necessary and essential" to plaintiff's conspiracy conviction.

### 1. Are the Issues Identical?

■ For a court to preclude litigation of an issue, the movant must establish that "the issues to be concluded are identical to those involved in the prior action." *Mother's Restaurant*, 723 F.2d at 1569. Plaintiffs argue that the issue in the instant case is whether the Jefferies payment is itself illegal such that it violates 26 U.S.C. § 162(c)(2) (1982). According to plaintiffs, this issue was never raised in the prior criminal case.

The government contends, however, that the issue in the instant case is not so much whether the payment itself violated § 162(c)(2), but whether it was made in connection with the illegal conspiracy. In other words, the government's theory is not that the payment is nondeductible because it was "illegal" in and of itself, but that it is nondeductible because—regardless of whether or not it was by itself a legal payment—it was made in furtherance of, and was an essential part of an illegal activity for which plaintiff was convicted.

Defendant does not contend that the issue of whether the Jefferies payment was legal in and of itself, was raised in Bilzerian's criminal trial. Therefore, in order to accept defendant's argument that there is an identity of issues between the present case and the past criminal case, defendant has the burden of proving that section 162(c)(2) applies not only to illegal payments per se, but also to payments made in furtherance of an illegal activity. If section 162(c)(2) only applies to illegal payments and not to payments made in furtherance of illegal activity, there cannot be an identity of issues sufficient to find issue preclusion against Mr. Bilzerian.

Section 162(c)(2) states that:

No deduction shall be allowed under subsection (a) for any payment (other than a payment described in paragraph (1)) made, directly or indirectly, to any person, if the payment constitutes an illegal bribe, illegal kickback, or other illegal payment under any law of the United States, or under any law of a State (but only if such State law is generally enforced), which subjects the payor to a criminal penalty....

26 U.S.C. § 162(c)(2) (1982). The Code and regulations do not specifically explain the term "illegal payment" or define its scope. Looked at in the context of prior Supreme Court decisions, though, it becomes clear that section 162(c)(2) only applies to those payments that are illegal in and of themselves.

In *Commissioner v. Sullivan*, 356 U.S. 27, 78 S.Ct. 512, 2 L.Ed.2d 559 (1958), the Supreme Court held that expenditures made in connection with illegal bookmaking activity were still deductible. The Court found that deductions were a matter of legislative grace that Congress can disallow as it chooses. *Id.* at 28, 78 S.Ct. 512. In allowing the deduction, the Court noted that if it had refused to allow the deduction in that case, bookmaking businesses would then be taxed on the basis of gross receipts rather than on the basis of net income as other businesses are. The Court acknowledged that "[i]f that choice is to be made, Congress should do it." *Id.* at 29, 78 S.Ct. 512.

In *Commissioner v. Tellier*, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966), the

Supreme Court again held that the public policy exception did not warrant disallowing a deduction for ordinary and necessary business expenses where a taxpayer attempted to deduct attorney fees paid in an unsuccessful criminal defense. As the Court found, "the federal income tax is a tax on net income, not a sanction against wrongdoing. That principle has been firmly imbedded in the tax statute from the beginning." *Id.* at 691, 86 S.Ct. 1118. As the Court noted, "Congress has authorized the imposition of severe punishment upon those found guilty of serious criminal offenses." *Id.* at 694, 86 S.Ct. 1118. The Court found "no warrant for attaching to that punishment an additional financial burden that Congress has neither expressly nor implicitly directed." *Id.* at 694–95, 86 S.Ct. 1118.

The *Sullivan* Court did note exceptions to this rule. First, a taxpayer could not deduct a payment where the allowance would frustrate sharply defined national or state policies. *Sullivan,* 356 U.S. at 29 (*citing Hoover Motor Express Co. v. United States,* 356 U.S. 38, 78 S.Ct. 511, 2 L.Ed.2d 568 (1958) and *Tank Truck Rentals, Inc., v. Commissioner* 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958)). The Court found that Congress did not intend to encourage businesses to violate public policy. Second, the Court stated that a taxpayer could not deduct a payment that "otherwise contravenes the federal policy expressed in a statute, or regulation. . . ." *Id.* (*citing Textile Mills Securities Corp. v. Commissioner,* 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249 (1941)).

The first exception noted above, the public policy exception, lacks validity after enactment of Section 162(c)(2) and its regulations. Section 1.162–1(a) of the Income Tax Regulations states in part:

A deduction for an expense paid or incurred after December 30, 1969, which would otherwise be allowable under section 162 shall not be denied on the grounds that

allowance of such deduction would frustrate a sharply defined public policy. See section 162(c), (f), and (g) and the regulations thereunder.

26 C.F.R. § 1.162–1(a) (1985).

Therefore, in order to deny the deduction, defendant must make a showing required by Section 162(c), and may not base its argument on public policy grounds. *Brizell v. Commissioner,* 93 T.C. 151, 166, 1989 WL 87364 (1989).[6] Payments connected to or in furtherance of illegal activity may now be deducted under 162(a) only as long as (1) they are ordinary and necessary business expenses; (2) not themselves illegal, and (3) Congress has not otherwise specifically forbidden their deductibility. *See* 26 U.S.C. §§ 162(a), (c) (1982); *see e.g.,* 26 U.S.C. § 280E (1982). Congress has forbidden certain deductions for payments made in furtherance of illegality even where the payments themselves were not proscribed. For example, in section 280E, Congress specifically stated that

No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances . . . which is prohibited by Federal Law or the law of any State in which such trade or business is conducted.

26 U.S.C. § 280E (1982). If section 162(c)(2) were to apply to any payment in furtherance of or in connection with illegality, there would be no purpose for section 280E.

This conclusion also finds support from *Brizell v. Commissioner,* 93 T.C. 151, 1989 WL 87364 (1989). In *Brizell,* taxpayers had previously been convicted of conspiring to file materially false corporate tax returns and of conspiring to defraud the United States by impeding the IRS. *Brizell,* 93 T.C. at 156. The conspiracy for which the taxpayers were

---

6. The court acknowledges that the public policy exception still applies to other forms of deduction. *See* 26 U.S.C. § 165 (loss deductions). *See e.g. Mazzei v. Commissioner,* 61 T.C. 497, 1974 WL 2710 (1974) (denying a loss deduction under section 165 based on public policy grounds where a taxpayer spent money on a sham counterfeiting scheme). Mr. Bilzerian claimed the deduction as an ordinary and necessary business deduction under section 162(a). In this motion, defendant has assumed *arguendo* that the payment was "ordinary and necessary" within the meaning of section 162(a) and therefore the court must do the same.

convicted involved, among other acts, commercial kickbacks which the taxpayers subsequently attempted to deduct. The IRS claimed these payments were commercial kickbacks and were illegal. The tax court, however, held that the IRS had failed to prove that "the payments were illegal, a prerequisite for disallowance under section 162(c)(2)." *Id.* at 161. In so ruling, the tax court implicitly found that the payments' connection to the conspiracy conviction was insufficient to meet the requirements of section 162(c)(2).

Although the Jefferies payment was connected to an illegal activity, defendant has failed to find a federal or state law that the payment specifically violates. As the Second Circuit noted, stock parking is not specifically prohibited by statute. *United States v. Bilzerian*, 926 F.2d at 1302. In addition, the cases relied on by defendant fail to support its argument. Defendant relies primarily on three cases.[7] In all three cases the court either applied collateral estoppel to an identical issue that had been fully litigated and essential to the judgment, or found that the payment itself violated a specific federal or state statute, thus making the payment illegal under 162(c)(2).

Defendant's argument that the payment was an essential part of the conspiracy conviction and is thus illegal, poses a substantial question. If a payment were truly an essential part of an illegal act, the illegal act could not occur absent the payment. The payment would theoretically be an element of the crime, making the payment itself illegal. In the present case, though, Bilzerian could have been convicted of conspiracy under count nine without ever making the payment. The payment at issue was only one of several means listed in the indictment that the jury could use to conclude that Bilzerian was guilty of conspiracy. Conceivably, Bilzerian could have been convicted of conspiracy prior to making the payment to Jefferies. The jury only needed to find, that at some point in time, an agreement existed between Bilzerian and Jefferies to defraud the IRS and SEC set forth by at least one of the means. Since the jury did not need to rely on the Jefferies payment to convict Bilzerian, the payment itself was not essential to the conspiracy and is therefore not itself illegal.

Bilzerian's conspiracy conviction, while involving many of the same facts presently before this court, did not address the issue of whether the payment to Jefferies was illegal in and of itself, and thus non-deductible under Section 162(c)(2). The jury in the criminal trial found that Bilzerian engaged in a conspiracy to defraud the IRS and SEC. The criminal activity was the attempt to defraud by failing to file the appropriate forms with the IRS and SEC, not the actual payment made to Jefferies. The payments were used by the government as evidence of that conspiracy. The court concludes that the issue of the payment's deductibility under

---

7. In *Considine v. United States*, 227 Ct.Cl. 77, 645 F.2d 925 (1981), *cert. denied*, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982), taxpayers had been indicted on and convicted of willfully and knowingly making and subscribing returns that understated income and overstated deductions. In the subsequent civil suit, the court held that the taxpayers were estopped from contesting the fact that they knowingly falsified the amount of their income and the amount of their deductions. *Id.* at 84, 645 F.2d 925. Unlike the case before this court, the *Considine* court was faced with similar issues that had been fully litigated and were essential to the conviction.

In *T.D. McCormick Contracting Co., Inc. v. Commissioner*, 55 T.C.M. (CCH) 1522 (1988), the court found that the payments made were themselves illegal under 29 U.S.C. section 186(a) (1982) and, therefore, clearly met the requirements of section 162(c)(2) as an illegal payment.

Finally, defendant relies on *Zecchini v. Commissioner*, 63 T.C.M. (CCH) 1717 (1992). In *Zecchini*, taxpayers had been convicted of conspiring to enrich themselves "through a series of fraudulent stock loan transactions and in particular the transaction of millions of dollars of stock loan business by petitioner 'in exchange for thousands of dollars of illegal kickbacks and commercial bribes.'" The information further charged that the co-conspirators carried on "an unlawful activity, to wit, commercial bribery, in violation of the laws of New York, Texas and Louisiana...." The taxpayer pled guilty and reaffirmed that he had made illegal kickbacks. In the subsequent civil suit, the tax court held that the taxpayers were estopped from denying that his payments to stock loan officers amounted to bribery under state law. Thus, the issue of the payment's legality was fully litigated and was essential to the judgment. The taxpayers even admitted that their actions were illegal.

Section 162(c)(2) is not identical to the issue decided in Bilzerian's criminal case.

### 2. Was the Disputed Issue Actually Litigated?

■ The second requirement for the application of collateral estoppel is that the disputed issue was raised and " 'actually litigated' " in the prior action. *Mother's Restaurant*, 723 F.2d at 1569. "The requirement is 'generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it.' " *Id.* at 1570 (citations omitted).

Pursuant to the judge's instructions, in order to convict Bilzerian of the conspiracy count, the jury needed to find that an agreement existed between Bilzerian and Jefferies to commit at least one of the objectives set forth in count nine by at least one of the means. One of the means listed in the indictment related to the Jefferies payment. Since a finding by the jury as to any one of the several means listed in count nine would have been sufficient to convict Bilzerian, Bilzerian needed to "actually litigate" every means listed, including the payment to Jefferies. Moreover, the Second Circuit stated, in summarizing the findings of the trial court, that the $125,000 payment was made "with the understanding that it would be refunded when an additional $125,000 of commissions was generated," that Jefferies sent plaintiff a false invoice, and that the purpose of the payment was "compensation." *United States v. Bilzerian*, 926 F.2d at 1290–91.

If the issue before this court was whether the payment was made in furtherance of the conspiracy, as defendant contends, it was clearly litigated in the criminal trial. However, as discussed above, the issue this court must decide is whether the payment was illegal within the terms of section 162(c)(2). This issue was not raised in the criminal trial and therefore could not have been actually litigated.

### 3. Was Determination of the Issue Essential to the Prior Judgment?

■ Even if this court finds that this case presents the identical issue raised and litigated in the prior criminal action, defendant must also show that the jury's determination in the criminal case—that Bilzerian made the disputed payment in furtherance of the conspiracy—was "necessary and essential" to his conviction. *Mother's Restaurant*, 723 F.2d at 1569. While this requirement "does not mean that the finding must be so crucial that, without it, the judgment could not stand", the court must find that the decision in the prior case was more than just "the incidental or collateral determination of a nonessential issue." *Id.* at 1571.

Defendant contends that the payment was an essential part of the Robertson conspiracy. Count nine of the indictment states that an object of the conspiracy was to conceal Bilzerian's ownership of the Robertson stock from the SEC and IRS and to secretly compensate Jefferies for a $250,000 trading loss. As a means of that conspiracy, the indictment stated that Bilzerian made a $125,000 payment to Jefferies. In connection with this payment, the indictment further alleged that a false and fictitious invoice for financial services was sent from Jefferies to Bilzerian, who deducted the payment as a consulting fee.

Plaintiffs argue that count nine of the indictment in Bilzerian's criminal case listed five different alleged objectives of the conspiracy and nine different overt acts. Furthermore, Bilzerian notes that the jury was instructed that it could find him guilty of conspiracy even if the criminal objective upon which the conspiracy charge is premised was not accomplished as long as one of the nine overt acts had been committed. On this basis, plaintiffs contend that it was not necessary or essential for the jury to determine that the payment was made in connection with the conspiracy in order for it to render its verdict.

Thus, in the present case, the court is faced with the task of determining on what basis the jury reached a decision. The problem is compounded by the fact that the charge in the case involved conspiracy and listed several objects, means, and overt acts. Since the court professes no claim to psychic powers, it cannot retroactively enter the jurors' minds. Only by using logic, can the

court make any headway on this problem. Since the jury could have found Bilzerian guilty of conspiracy without reaching the issue of the Jefferies payment, logic tells us that it was not essential to the jury's determination. This is the only possible determination absent the power to read the jurors' minds. Therefore, the court concludes that the payment itself was not necessarily essential to the prior criminal judgment.

■ Here, however, the issue to be decided is the legality of the Jefferies payment for the purposes of section 162(c)(2). The issue was not raised, litigated, or essential to the judgment in the criminal case. The government has failed to establish the requirements necessary as set out in the *Mother's Restaurant* test. Therefore, defendant's motion for summary judgment based on the issue of collateral estoppel must be denied.

## C. The D.C. Circuit Litigation

As the government notes, the D.C. Circuit has collaterally estopped plaintiffs from claiming that Bilzerian did not violate a number of securities laws. *SEC v. Bilzerian*, 29 F.3d 689 (D.C.Cir.1994), *aff'g* 814 F.Supp. 116 (D.D.C.1993). The D.C. Circuit litigation involves a civil action brought by the SEC against Bilzerian for violations arising out of the same transactions at issue in his criminal conviction.

In the D.C. Circuit litigation, plaintiffs argued that Bilzerian's criminal convictions under section 10(b) of the Securities Exchange Act of 1934 in the prior case did not prevent him from challenging his civil liability under sections 13(d), 14(d), and 14(e) of the Act because the criminal conviction did not conclusively establish the facts necessary to find a violation of the civil charges. Both the U.S. District Court for the District of Columbia and the D.C. Circuit rejected this argument. *Bilzerian*, 29 F.3d at 689.

Although relevant, the D.C. Circuit opinion is distinguishable from the present case. The D.C. Circuit, looking at facts established in all nine counts of the indictment, found that similar issues, essential to the prior judgment, had been fully litigated and decided in the criminal conviction. In the case

before this court, the facts may be similar, but the issues decided in the criminal conviction were not. In the prior criminal case, the issue raised was whether the Jefferies payment was made as a means of the conspiracy. In the present case, however, the government must show that the payment was illegal under section 162(c)(2). As discussed above, defendant must show that the payment itself is illegal. In addition, the present litigation focuses solely on count nine and the conspiracy conviction. Based on the lack of any findings of fact in the jury verdict, it is unclear what facts underlay the jury's conspiracy conviction decision. Therefore, the court may not bar plaintiffs' claim based upon the doctrine of collateral estoppel or issue preclusion.

## CONCLUSION

Defendant's motion for summary judgment, based on the sole issue of collateral estoppel, is denied. Although the facts were similar, the issue of the legality of the Jefferies payment for purposes of section 162(c)(2) was not raised, litigated, or essential to conviction on count nine in Bilzerian's prior criminal case. Plaintiffs are hereby directed to respond to the remainder of the government's summary judgment motion.

**IT IS SO ORDERED.**