**In the Matter of W. David FRETZ, Debtor.**

**W. David Fretz, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 97–82444–JAC–7.**
**Adversary No. 97–80236–JAC–7.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

April 12, 1999.

**606**

Patrick Darby, Bradley, Arant, Rose & White, Birmingham, AL, for plaintiff.

Lynne Murphy, U.S. Department of Justice, Tax Division, Washington, D.C., for defendant.

Tazewell Shepard, Huntsville, AL, trustee.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

On March 30, 1999, this case came before the Court for trial on the complaint filed by the debtor, Dr. W. David Fretz ("Dr. Fretz"), to determine the dischargeability of his federal income tax liability to the United States, Internal Revenue Service ("IRS"). At the conclusion of the trial, the Court dictated its findings of fact and conclusions of law into the record and determined that judgment was due to be entered in favor of Dr. Fretz under 11 U.S.C. § 523(a)(1)(C).[1]

## BACKGROUND

For the tax years 1982 through 1992, Dr. Fretz did not file federal income tax returns timely or pay the federal income taxes owed for those tax years. The debtor is an alcoholic who has been in recovery since 1993. Prior to that time, Dr. Fretz severely abused alcohol for a number of years. By the mid–1980's, the debtor spent hundreds of dollars on alcohol each week and drank a quart of expensive vodka every night before passing out. Before attending Alcoholics Anonymous in 1993, Dr. Fretz's life was generally falling apart. The debtor lost all control over his personal life and his finances. In addition to failing to pay his income taxes, Dr. Fretz failed to pay a number of his creditors and allowed two houses to be foreclosed despite having equity in each. The debtor paid no attention to his financial affairs during this time. Dr. Fretz testified that he, instead, focused all of his energy on maintaining his profession and hiding his alcoholism from his colleagues.

Prior to 1982, Dr. Fretz had worked in a clinic for a number of years and had been paid a salary from which his employer withheld income taxes, but during the years in dispute a substantial part of the debtor's income was earned by providing medical services as an independent contractor at various Alabama hospitals and clinics. As an independent contractor, Dr. Fretz was responsible for keeping records of his income and expenses and for making payments of estimated taxes. Although Dr. Fretz had sufficient income to pay his 1982 through 1992 federal income tax liabilities on a timely basis, the debtor kept no records and made no estimated tax payments for the years in question. However, there is no evidence that the debtor intentionally destroyed any financial records for the years in question or took any affirmative acts to prevent the IRS from discovering his tax liability. In fact, the IRS received 1099's for the income earned

---

1. This memorandum opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

by Dr. Fretz as an independent contractor during this time.

Dr. Fretz testified that he never intended not to pay the taxes in question, but that "he really didn't care" whether his taxes or any other bills were paid during this period. Initially, Dr. Fretz failure to file was due to simple inattention after he stopped working as an employee and became an independent contractor. By the mid–1980's, he began, however, to worry about his failure to file tax returns and understood that he owed taxes to the IRS. The debtor took no actions to hide his tax liability from the IRS such as transferring assets or hiding assets in offshore accounts and he did not maintain an extravagant lifestyle. Dr. Fretz simply ignored his financial responsibilities.

During the time in dispute, the debtor also ignored his personal responsibilities which is evidenced by his numerous marriages and divorces. In January of 1986, Dr. Fretz married a woman who also drank heavily. Throughout this marriage, the debtor depended on his wife, Barbara, to handle their finances. In September of 1990, the couple allowed their house to be foreclosed despite having equity in same.

Finally, in September of 1992, Dr. Fretz contemplated suicide as a means of dealing with his escalating tax problems until he confided his problems to his current wife by common law, Deborah. In April of 1993, the debtor finally began to turn his life around by attending Alcoholics Anonymous.

On January 27, 1994, Dr. Fretz pled guilty to willfully failing to file his 1988 tax return for which the debtor was ordered to pay restitution in the amount of $85,666 and was placed under house arrest for six months. After Dr. Fretz was sentenced, he acknowledged his outstanding tax liabilities for the tax years 1982 through 1992 and worked with the IRS to file tax returns for the subject years, and on the 7th day of November tax returns for the years in question were signed by the debtor and filed with the IRS which constituted suffi-

cient filings for the purposes of § 523(a)(1)(B). In April of 1995, as part of his Alcohol Anonymous recovery program, Dr. Fretz also voluntarily asked to meet with the IRS agent who initially investigated his failure to file and thanked her for helping him get his life straightened out. On November 7, 1994, the debtor signed Forms 4549 for each of the tax years in question as prepared by an Internal Revenue Agent.

On June 30, 1997, the debtor filed his chapter 7 petition for relief. On July 14, 1997, the debtor filed an adversary proceeding seeking to discharge his federal income liability for tax years 1982 through 1992. The total amount sought to be discharged including interest and penalties exceeds one million dollars. In the complaint, the debtor acknowledges a debt in the estimated amount of one million dollars for federal income taxes for tax years 1982 through 1992, but alleges that the tax debt is dischargeable under the Bankruptcy Code. The IRS responded to the complaint and asserted that the debtor's federal income tax liabilities for the years in question are nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). The IRS also filed a counterclaim against the debtor, asserting that his federal income tax liability for the tax year 1993, including penalties and interest thereon, is nondischargeable pursuant to 11 U.S.C. §§ 507(a)(8)(A)(i), 523(a)(1)(A), and 523(7). At trial, the debtor conceded that his 1993 federal income tax liability is nondischargeable to the extent any tax is owed for said year.

The only issue remaining then is whether pursuant to § 523(a)(1)(C), Dr. Fretz's failure to timely pay his taxes in the disputed years and failure to timely file tax returns for same was due to the debtor's willful attempt to evade or defeat the federal income taxes owed by him for those years.

## ANALYSIS

■ Based upon the foregoing, the IRS contends that Dr. Fretz's tax obligations

for the relevant years should be excepted from discharge and relies on § 523(a)(1)(C) of the Code which provides in pertinent part, as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1128(b) of this title does not discharge an individual debtor from any debt—
> (1) for a tax or a customs duty—
> (C) with respect to which the debtor .... willfully attempted in any manner to evade or defeat such tax[.]

To prevail, the IRS has the burden of proving, by a preponderance of the evidence, that the debtor's failure to pay taxes was committed with fraudulent intent.[2] The IRS argues that the debtor's federal income tax obligations, including taxes and interest thereon, for the tax years 1982 through 1992 are due to be excepted from discharge pursuant to § 523(a)(1)(C) because the debtor consistently failed to file federal income tax returns for those years and pay the taxes owed by him for those years when he had the financial resources available to pay the taxes.

■ The definition of "willful attempt to evade" in the context of a § 523(a)(1)(C) discharge case is that found in other civil tax cases—voluntary, conscious, and intentional.[3] The debtor argues that a simple knowing failure to file tax returns and pay taxes is not sufficient to except a debt from discharge under § 523(a)(1)(C). Instead, the debtor contends that the IRS must present evidence of dishonesty: hiding of assets or income, falsification of documents, destruction of records, deliberate and fraudulent manipulation, or some other purposeful scheme to mislead or defraud the IRS. In support of his contention, Dr. Fretz cited the case of *In re Boch*, 154 B.R. 647, 658 (Bankr.M.D.Pa. 1993) in which the bankruptcy court found that the debtor's failure to file tax returns, although a factor to be considered, was not dispositive of willful evasion. The court concluded, however, that other circumstantial evidence established the nondischargeability of the debt based on tax evasion where the debtor, who was a well-educated chiropractor, failed to file returns for years in which he knew he had substantial income, concealed assets from the IRS, and procured false documentation for purposes of evading taxes. The debtor also cited the case of *In re Lewis*, 151 B.R. 140, 146 (Bankr.W.D.Tenn.1992) in which the bankruptcy court found that the debtor engaged in a pattern of concealing assets, dealing in cash, shielding income, and otherwise frustrating various IRS collection efforts to determine the nondischargeability of the debtor's tax liability. The debtor distinguishes these cases from his own asserting that none of the other circumstances can be shown by the IRS showing wilful evasion.

In opposition, the IRS argues that the debtor's knowledge that tax returns needed to be filed, and, therefore, deliberate failure to file constitutes a willful attempt to evade taxes. In support of their contention, the IRS relies in part on the case of *In re Fegeley*, 118 F.3d 979 (3rd Cir. 1997) in which the Third Circuit determined the debtor's intentional failure to file his federal income tax returns, together with his failure to pay taxes when he had the resources to do so satisfied the conduct element of § 523(a)(1)(C) for willful tax evasion. The court found that the required mental state for the discharge exception for willful tax evasion was satisfied by evidence showing that the debtor had a duty under the tax law to pay taxes, knew he had that duty, and voluntarily and intentionally violated that duty, despite having the financial ability to discharge his duty. The IRS also relies upon the case of *In re Toti*, 24 F.3d 806 (6th Cir.1994) in

**2.** *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Paige*, 196 B.R. 526, 527 (Bankr.D.Ariz.1996); *In re Williams*, 164 B.R. 352, 354 (Bankr. M.D.Fla.1994).

**3.** *In re Miller*, 176 B.R. 266, 267 (Bankr. M.D.Fla.1994).

which the Sixth Circuit found that the tax evasion discharge exception applied to the debtor's intentional failure to file tax returns.

The Court finds the Eleventh Circuit case of *In re Haas* instructive on the issue. In *Haas* the government argued "that if a debtor had both an awareness of his duty to pay his taxes and the present ability to pay them but nonetheless failed to satisfy that duty, then the tax liability is nondischargeable under Section 523(a)(1)(C)." [4] The Eleventh Circuit rejected this argument because such an interpretation of § 523(a)(1)(C) "effectively would make all tax debts nondischargeable." [5] The Eleventh Circuit further stated that:

If every knowing failure to pay taxes constituted an evasion of taxes under section 523(a)(1)(C), then discharge of tax liability would be available only to those very few debtors who discovered their debts to the IRS in the course of their bankruptcy proceeding.

. . . .

Under the IRS's interpretation of section 523(a)(1)(C), the only honest debtor would be a debtor who is wholly unaware of her debt to the IRS. However, she also is an honest debtor who, fully cognizant of the debt that she owes to the IRS, uses her income to pay other debts instead. Her failure to pay the IRS is the result of not dishonesty but of the defining characteristic of all debtors—honest and dishonest, alike—insufficient resources to honor all of her obligations. Similarly, Haas technically had the financial ability to pay his taxes, but he still lacked the resources to pay all of his debts. That he decided to use his limited funds to satisfy obligations other than his properly acknowledged income

taxes does not render him a dishonest debtor, simply a debtor.[6]

Similarly, the IRS's interpretation of § 523(a)(1)(C) in the present case would virtually "render the general rule of dischargeability of tax liabilities an empty letter and defeat the central purpose of the Bankruptcy Code." [7]

■ The IRS attempts to distinguish *Haas* because the debtors in that case accurately reported their income and voluntarily filed their tax returns whereas Dr. Fretz failed to timely file his tax return for the years in question in addition to failing to pay the taxes due. However, the element of willfulness under § 523(a)(1)(C) "must be related to an act which constitutes an attempt, in any manner to evade or defeat" the debtor's income tax liability.[8] The failure to file without more is not a willful attempt to evade or defeat federal income taxes.

■ The facts of this case are similar to the facts of *In re Paige*, 196 B.R. 526 (Bankr.D.Ariz.1996) where the bankruptcy court held that the debtor's failure to file returns was the result of his alcoholism, not a willful attempt to evade taxes, and therefore, the debt was dischargeable. The court found that the debtor was not indifferent to his obligation to file returns and pay taxes, but his alcoholism debilitated him for a decade after which he voluntarily filed late tax returns. There was no evidence to show wilful concealment of assets, deliberate and fraudulent manipulation, the shielding of income, or other schemes to frustrate tax collection efforts. The Court concluded that the "standard of wilful behavior which rises to the level of a nondischargeable obligation is not present here." [9]

---

4. *Haas*, 48 F.3d at 1155.

5. *Id.*

6. *Id.*

7. *Id.*

8. *In re Miller*, 176 B.R. at 267 (J. Paskay) (finding that virtually every case that deals with § 523(a)(1)(C) deals with a debtor who took some action in addition to merely not filing the required tax return).

9. *In re Paige*, 196 B.R. at 527.

In the present case, the Court is also not persuaded by the evidence that Dr. Fretz willfully attempted in any manner to evade or defeat his income tax liability for the years in question. The Court found Dr. Fretz to be a very credible witness on this issue and found no reason to disbelieve his representations. The debtor's failure to timely file tax returns and pay taxes was not part of a scheme or design to evade the federal incomes taxes owed by him. The debtor was simply irresponsible as a result of his alcoholism. Dr. Fretz's failure to pay his taxes was a result of poor financial management, but not dishonest or fraudulent intent. The debtor made and spent his money during the tax years in question and admittedly failed to pay his taxes. He also failed to pay other creditors and failed to fulfill numerous family obligations. During the 10 year period from 1982 to 1992 the debtor did not accumulate any property or wealth, nor did he hide or conceal any property, nor did he live a lavish lifestyle. He has no wealth now to speak of, other than an IRA worth approximately $60,000 which he has acquired since 1993. Once the debtor became sober, he pled guilty to the criminal charges against him and worked with the IRS to file late returns. There is no evidence that Dr. Fretz intentionally destroyed any records, hid assets or income, or otherwise evidenced any intent to evade or defeat the payment of taxes. Rather, the debtor simply failed to pay his taxes and failed to timely file his tax returns.

In conclusion, the Court is convinced that Dr. Fretz's conduct did not contain sufficient aggravating circumstances to raise the late filing of returns and failure to pay to the level of willfulness that would make the debt at issue nondischargeable.

A separate order will be entered consistent with this opinion.